**IN THE UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ALLISON BELINDA BURKETT, | : | Chapter 11 Case No. 26-51110-RMM |
| | : | |
| Debtor. | : | |
| | : | |

**SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR**
**ALLISON BELINDA BURKETT**

**September 29, 2026**

David L. Bury, Jr.
E. Tate Crymes
Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com; tcrymes@stoneandbaxter.com
Counsel to Debtor

# NOTICE

THIS IS THE ONLY DOCUMENT AUTHORIZED BY THE COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF CONSENT TO OR ACCEPTANCE OF THE SUBCHAPTER V PLAN OF REORGANIZATION OF DEBTOR ALLISON BELINDA BURKETT (AS IT MAY BE AMENDED, THE "**PLAN**"). NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE COURT CONCERNING THE DEBTOR OR THE PLAN EXCEPT AS SET FORTH IN THIS PLAN.

ALL HOLDERS OF CLAIMS ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THIS PLAN AND READ CAREFULLY ITS TERMS AND CONDITIONS BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT IT.

THE STATEMENTS CONTAINED IN THIS PLAN ARE MADE AS OF THE DATE HEREOF, EXCEPT TO THE EXTENT THAT AN EARLIER DATE IS SPECIFIED WITH RESPECT TO ANY INFORMATION. THE DELIVERY OF THIS PLAN DOES NOT IMPLY THAT THE INFORMATION CONTAINED IN IT IS CORRECT AT ANY TIME AFTER SEPTEMBER 29, 2026.

NO ENTITY SHOULD CONSTRUE THE CONTENTS OF THIS PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH ENTITY SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, OR TAX ADVISORS AS TO ANY SUCH MATTERS.

AS TO ANY CONTESTED MATTERS, ADVERSARY PROCEEDINGS, OTHER CLAIMS, ACTIONS, OR THREATENED ACTIONS INVOLVING THE DEBTOR OR HER CREDITORS THAT EXIST, OR MAY BE MADE OR INITIATED IN THE FUTURE, THIS PLAN WILL NOT CONSTITUTE, NOR SHALL IT BE CONSTRUED AS, AN ADMISSION OF ANY FACT, LIABILITY, STIPULATION, OR WAIVER. INSTEAD, ANY MATERIAL IN THIS PLAN WILL BE TREATED AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL NOT BE ADMISSIBLE IN FURTHER PROCEEDINGS.

ANY APPROVAL BY THE BANKRUPTCY COURT OF THIS PLAN DOES NOT CONSTITUTE A FINDING BY THE COURT THAT THE REPRESENTATIONS CONTAINED IN THE PLAN ARE FACTUAL; NOR DOES ANY SUCH APPROVAL CONSTITUTE AN ENDORSEMENT OF ANY OF THE REPRESENTATIONS CONTAINED IN THIS PLAN. THE PLAN WILL NOT BE BINDING ON CREDITORS UNLESS IT IS CONFIRMED BY THE BANKRUPTCY COURT AT THE CONFIRMATION HEARING.

## I. INTRODUCTION

On July 1, 2026, Allison Belinda Burkett (the "**Debtor**") filed the above-styled Chapter 11 bankruptcy case (the "**Bankruptcy Case**"). The Bankruptcy Case remains pending in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division (the "**Bankruptcy Court**"). Pursuant to applicable provisions of and Rules related to the Bankruptcy Code, including, without limitation, Sections 1189, 1190, and 1191 of the Bankruptcy Code, the Debtor proposes

this Subchapter V Plan of Reorganization dated September 29, 2026 (the "**Plan**") to facilitate her reorganization and to pay Allowed Claims as more particularly described below.

**A. Summary of the Plan**

The purpose of this Plan is to set forth information that (i) outlines the history of the Debtor's business and the reasons that the Debtor filed this Chapter 11 Case, (ii) sets out the terms and conditions of the Plan, and (iii) assists each holder of any Claim against the Debtor entitled to vote for acceptance or rejection of the Plan to make an informed decision of whether to vote to accept or reject the Plan.

**B. Summary of Proposed Claim Treatment**

This Plan provides for the repayment of Allowed Claims as described herein. Such repayment will occur, primarily, from the Debtor's income and, if proposed herein, the sale or other disposition of the Debtor's assets.

The Plan may be summarized as follows:

| Class | Impairment | Treatment |
|---|---|---|
| **Unclassified Claims** (including Administrative Fee Claims, Statutory Fees, and General Administrative Claims) | Unimpaired | Certain Claims may not be classified under Chapter 11 plans, including Claims entitled to Administrative Expense status, Sub V Trustee fees, and court costs. The Plan provides for payment of Unclassified Claims on or before the Effective Date of the Plan unless otherwise agreed by the holder of an unclassified claim. Claims entitled to priority status under 11 U.S.C. § 507(a)(8) (certain tax claims), if any, shall be paid in a manner authorized under 11 U.S.C. § 1129(a)(9)(C), within the times specified in this Plan. |
| **Class 1** – Non-Tax Priority Claims. | Impaired | There are no known Claims in this Class. If such Claims are Allowed by the Bankruptcy Court, then, except to the extent that the holder of an Allowed Class 1 Claim agrees to other, lesser treatment, any holder of an Allowed Class 1 Claim shall be paid in full at the times provided for the payment of Unclassified Claims. |

| | | |
|---|---|---|
| **Class 2** – Allowed Secured Claim of Robins Financial Credit Union, secured by an alleged first priority security interest in real property located at 207 Twisted Laurel Lane, Bonaire, GA (the "**Georgia Home**"). | Unimpaired | Class 2 includes the Allowed Secured Claim of Robins Financial Credit Union ("**RFCU**") (the "**Class 2 Allowed Secured Claim**"), estimated by Debtor in the amount of **$241,709.00** as of the Petition Date. It is allegedly secured by a first priority security interest in the Georgia Home. The Reorganized Debtor shall satisfy the Class 2 Allowed Secured Claim in full in accordance with the prevailing terms and conditions of the existing promissory note and loan documents in effect on the Petition Date (as projected on the Budget); provided, however, that the Reorganized Debtor shall cure any defaults or arrearages prior to the Effective Date or in not more than twelve (12) equal monthly installments commencing on the 5th day of the month that follows the month in which the Effective Date occurs, with a like payment on the 5th day of each month thereafter until the arrearage, if any, is paid in full. No provision of the Plan shall impair any credit bid right of the holder of the Allowed Class 2 Secured Claim. The Reorganized Debtor's obligations under Class 2 may be pre-paid in whole or part at any time, without penalty. Any Deficiency Claim of the holder of the Class 2 Allowed Secured Claim shall be paid as an Allowed Claim in Class 4. The holder shall retain all liens, if any, securing the Claim until the Claim is paid in full or otherwise satisfied; provided, however, that, except as otherwise provided in the Plan, Confirmation will void, pursuant to § 506(d), all liens in excess of the Allowed Secured Claim, if any, in this Class. |
| | | |

| | | |
|---|---|---|
| **Class 3** – Allowed Secured Claim of Victoria Mutual Building Society, secured by an alleged first priority security interest in real property located at 558 Heleconia Ave. (Jamaica, W.I.) (the "**Jamaica Home**"). | Unimpaired | Class 3 includes the Allowed Secured Claim of Victoria Mutual Building Society ("**VMBS**") (the "**Class 3 Allowed Secured Claim**"), estimated by Debtor in the amount of **$341,365.16** as of the Petition Date. It is allegedly secured by a first priority security interest in the Jamaica Home. The Reorganized Debtor shall satisfy the Class 3 Allowed Secured Claim in full in accordance with the prevailing terms and conditions of the existing promissory note and loan documents in effect on the Petition Date (as projected on the Budget); provided, however, that the Reorganized Debtor shall cure any defaults or arrearages prior to the Effective Date or in not more than twelve (12) equal monthly installments commencing on the 5th day of the month that follows the month in which the Effective Date occurs, with a like payment on the 5th day of each month thereafter until the arrearage, if any, is paid in full. No provision of the Plan shall impair any credit bid right of the holder of the Allowed Class 3 Secured Claim. The Reorganized Debtor's obligations under Class 3 may be pre-paid in whole or in part at any time, without penalty. Any Deficiency Claim of the holder of the Class 3 Allowed Secured Claim shall be paid as an Allowed Claim in Class 4. The holder shall retain all liens, if any, securing the Claim until the Claim is paid in full or otherwise satisfied; provided, however, that, except as otherwise provided in the Plan, Confirmation will void, pursuant to § 506(d), all liens in excess of the Allowed Secured Claim, if any, in this Class. |
| | | |

| | | |
|---|---|---|
| **Class 4** – General Unsecured Claims, including Deficiency Claims. | Impaired | The Allowed Unsecured Claims in Class 4 (each a "**Class 4 Allowed Unsecured Claim**"), which include Allowed Deficiency Claims and Allowed Rejection Claims (if any), shall be paid as follows: The Reorganized Debtor shall pay the holders of Class 4 Allowed Unsecured Claims their Pro Rata Share of the Total Class 4 Distribution (as projected on the Budget) based on each such holder's Class 4 Allowed Unsecured Claim compared to the total of all Class 4 Allowed Unsecured Claims. The Reorganized Debtor shall pay such Class 4 Total Distribution in 3 (or less) annual installments of varying amounts (as shown on the Budget) commencing within sixty (60) days after the first anniversary of the Effective Date, with each subsequent annual installment being made within sixty (60) days after each subsequent anniversary of the Effective Date. The Reorganized Debtor's obligations under Class 4 to make the Total Class 4 Distribution can be satisfied at any time, with any payment of the Total Class 4 Distribution, at whatever time that is on or before the dates required under the Plan, not resulting in a penalty, including, without limitation, a pre-payment penalty. Such Total Class 4 Distribution, when made in full, shall be in full satisfaction of the Reorganized Debtor's obligations under any Allowed Unsecured Claims allowed in Class 4. Notwithstanding anything else in the Plan to the contrary, any Allowed Unsecured Claim in Class 4 shall be reduced by any payment received by the creditor holding such Claim from any third party or other obligor and the Reorganized Debtor's obligations hereunder shall be reduced |

| | | |
|---|---|---|
| | | accordingly. |
| **Class 5 –** Interests of the Debtor | Impaired | Class 5 includes the Debtor's Interests. On the Effective Date, the Reorganized Debtor will, subject to the terms and conditions of the Plan, retain all of her Assets. |

**Your rights may be affected. You should read the Plan carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### C. Defined Terms, Computation of Time, and Rules of Construction

#### 1. Defined Terms

As used in the Plan, capitalized terms have the meanings set forth on **Schedule 1** to this Plan. Any term that is not otherwise defined in the Plan, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

#### 2. Accounting Terms

Accounting terms which are not otherwise defined in this Plan have the meanings given to them under the Bankruptcy Code, the IRC, the Uniform Commercial Code, or GAAP, in that descending order of priority. If the definition of an accounting term that is defined in this Plan is inconsistent with the meaning of such term under GAAP, then the definition set forth in this Plan will control.

#### 3. Construction

Unless the context of this Plan otherwise clearly requires: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) references to any gender include the other genders, (c) the words "include," "includes," and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation," (d) the term "or" has the inclusive meaning represented by the phrase "and/or," (e) the terms "hereof," "herein," "hereunder," "hereto," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan; (f) the terms "day" and "days" mean and refer to calendar day(s); (g) the terms "year" and "years" mean and refer to calendar year(s); (h) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Plan; (i) any reference to any Entity as a holder of a Claim includes that Entity's successors, assigns, and affiliates; (j) all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (k) captions and headings to Articles and Sections are inserted for convenience of

reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (l) subject to the provisions of any contract, articles of incorporation, code of regulations, similar constituent documents, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

### 4. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## II. BACKGROUND

### A. Overview of the Debtor

Debtor Allison Belinda Burkett, M.D. is currently a vascular surgeon, and sole member at the Middle Georgia Vascular Surgery Center, L.L.C. (the "**MGVSC**")—which she formed in 2016. Debtor's current role with MGVSC is practicing medicine as well as overseeing clinical protocols, managing staff, and supervising the office. Debtor currently resides in her home in Bonaire, and has two college-aged children.

Debtor's assets primarily consist of her residence located in Bonaire, her elderly mother with dementia's home in Jamaica (which Debtor owns), her vehicles (driven by her children), her membership interests in MGVSC, Flamingo Medical Spa, LLC, and Flamingo Medical Services, LLC, her furniture, and her bank accounts. Debtor's primary liabilities consist of disputed litigation claims brought by Advanced Wound Care LLC a/k/a WoundGenex ("**WoundGenex**") (as discussed in Section II.B below), as well as some other consumer and business debts, with the business debts being, for the most part, in the form of alleged guaranties for MGVSC debts.

### B. Events Leading to the Bankruptcy Filing

In May 2026, WoundGenex filed suit against the Debtor and her business, MGVSC, in the U.S. District Court for the Middle District of Georgia as Case No. 5:26-CV-00207-MTT. In the suit, WoundGenex alleged that MGVSC contracted with WoundGenex for wound care services and that MGVSC breached the contract, with the allegation that Debtor is also liable on various grounds alleged in the suit. This litigation continued from May through the filing of this case.

After considering the cost of defending the litigation and the potential damages sought by WoundGenex (damages in excess of $235,100.00), Debtor desired to resolve these debts and claims through a Chapter 11 Subchapter V case and payment under a Subchapter V plan of reorganization. Accordingly, this Bankruptcy Case, along with a related Chapter 11 case for MGVSC (Bank. M.D. Ga. 26-51113-RMM) was filed on July 1, 2026.

## III. THE PLAN

### A. Introduction

The purpose of this Plan is to allow the Debtor to reorganize her financial affairs in a way that will permit her to pay Allowed Claims as proposed in this Plan.

**This Plan, if accepted by holders of Allowed Claims and Confirmed by the Court, is a contract between Debtor and the holders of Allowed Claims for the repayment of such Claims as provided under this Plan. When Confirmed, the provisions of this Plan will be binding upon all Parties-in-Interest as provided under 11 U.S.C. § 1141(a).**

### B. Classification Generally

The categories of Claims and Equity Interests listed below classify Claims and Interests for all purposes, including (i) voting, (ii) confirmation of the Plan, and (iii) distribution pursuant to the Plan and applicable provisions of the Bankruptcy Code, including, without limitation, Section 1191. The Plan designates classes of Claims in the table in Section I.B (above).

Any Class of Claims that, as of the date of the commencement of the Confirmation Hearing, contains no Allowed Claims will be deemed deleted from the Plan for purposes of determining acceptance or rejection of the Plan by such Class under Section 1129(a)(8) of the Bankruptcy Code. The classification of Claims against the Debtor, their respective voting rights per classification, and the proposed treatment per classification pursuant to the Plan are as described in the table in Section I.B (above).

**No Claim shall entitle a Creditor to a distribution of Cash or to other consideration pursuant to this Plan unless, and only to the extent that, such Claim is an Allowed Claim. Notwithstanding any other provisions of this Plan, the Debtor reserves all legal and equitable objections to the Allowance of any Claims.**

### C. Plan Classification

The classification of Claims against and Equity Interests in the Debtor pursuant to this Plan is as follows:

**Class 1**. Class 1 includes Non-Tax Priority Claims. There are no known Claims in this class. If such Claims are allowed, then Class 1 will be impaired.

**Class 2**. Class 2 includes the Allowed Secured Claim of Robins Financial Credit Union. Class 2 is unimpaired.

**Class 3**. Class 3 includes the Allowed Secured Claim of Victoria Mutual Building Society. Class 3 is unimpaired.

**Class 4**. Class 4 includes the allowed general unsecured claims, including any deficiency claims. Class 4 is impaired.

**Class 5**. Class 5 includes the interest of the Debtor. Class 5 is impaired.

### D. Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that requirement of the Code. As such, the Debtor has not placed the following Claims in any class:

#### 1. Administrative Claims and Expenses

Allowed Adminstrative Claims are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Section 507 of the Bankruptcy Code. Except to the extent that the holder of an Allowed Administrative Claim agrees to other, lesser treatment, each Holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim the full amount thereof, in Cash, by the later of (i) the Effective Date and (ii) the date on which such Claim becomes an Allowed Administrative Claim. Known Administrative Claims, if any, are estimated as of the Effective Date and shown on the Budget.

#### 2. Statutory Fees

Statutory Fees, if any, are estimated as of the Effective Date and shown on the Budget.

#### 3. Professional Fee Claims

Professionals having Allowed Fee Claims shall be paid in full, in Cash, by the Debtor in accordance with the Order Establishing Compensation Procedures for Professionals entered in the Bankruptcy Case on August 13, 2026 (Dkt. 42) (the "**Professional Fee Order**"), as otherwise agreed in writing between the Debtor and the Professional, or, with respect to any disputed Fee Claim, the date on which the Bankruptcy Court order allowing such Fee Claim becomes a Final Order. After the Confirmation Date, Professionals of the Debtor shall be compensated as set forth below in this Plan.

The Bankruptcy Court must rule on all Professional fees and expenses incurred from the Petition Date through and including the Confirmation Date before such fees will be payable, unless the order approving such Professionals' retention provides otherwise. The Professional in question must file and serve a properly noticed fee application, and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be payable under the Plan. Unpaid Fee Claims, if any, are estimated as of the Effective Date and shown on the Budget.

#### 4. Bar Dates for General Administrative Claims

The holder of an Administrative Claim ***other than*** (1) a Fee Claim, (2) a Post-petition Obligation incurred and payable in the ordinary course of business by the Debtor (but excluding personal injury claims and unliquidated claims – the holders of which must initiate an appropriate procedure for allowance thereof under this subparagraph of this Plan on or before the Administrative Claim Bar Date), (3) statutory fees payable pursuant to 28 U.S.C. § 1930 (if any),

(4) an Administrative Claim that has been Allowed on or before the Effective Date, and (5) a Cure Cost Claim, must File and serve on the Debtor, the United States Trustee, and the Sub V Trustee a request for payment of such Administrative Claim (a "**Request for Payment**"). Any Request for Payment must be Filed by the Administrative Claim Bar Date set forth in the Confirmation Order. Reorganized Debtor shall publish a Notice of the Administrative Claim Bar Date in the *The Houston Home Journal*, the designated newspaper for publications of legal advertisements for the Debtor, once a week for four consecutive weeks, on the usual dates of publications of legal advertisements in such newspapers, which notice shall be deemed to constitute adequate notice to the holders of any such claims of the Administrative Claim Bar Date. Any Request for Payment must include at a minimum (a) the name and address of the holder of the Claim, (b) the amount of the Claim, and (c) the basis of the Claim. ***Failure to File and serve such request timely and properly shall result in the Administrative Claim being forever barred and discharged***. Objections to any Request for Payment by any party in interest must be Filed by the Reorganized Debtor and served on the requesting party within 30 days after the Filing of the applicable Request for Payment (the "**Administrative Claim Objection Deadline**"). ***The holders of the Administrative Claims enumerated in (1) – (5) above of this paragraph shall not be required to file a request for payment of their Administrative Claims, and shall be paid as specified in this Article***.

**5. Bar Dates for Fee Claims for Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date**

Professionals or other Entities asserting a Fee Claim for services rendered before the Confirmation Date must File and serve on the United States Trustee and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, or other order of the Bankruptcy Court, an application for final allowance of such Fee Claim no later than 60 days after service of the notice of entry of the Confirmation Order. ***Failure to File timely and serve such application shall result in the Fee Claim being forever barred and discharged.*** Objections to any Fee Claim must be Filed and served on the parties that were served with such application and the requesting party by the later of (i) 30 days after the filing of the applicable request for payment of the Fee Claim and (ii) such later date as provided for by order of the Bankruptcy Court (the "**Fee Objection Deadline**").

**6. Priority Tax Claims**

Priority tax claims are unsecured income, employment, property, and other taxes described by Section 507(a)(8) of the Bankruptcy Code ("**Priority Tax Claims**"). Each holder of an Allowed Priority Tax Claim will be paid in respect of such Allowed Claim (including with respect to any interest that is determined to be part of its Allowed Claim), at the option of Debtor, per one of the following two options:

(a) in Cash installments together with Statutory Interest via equal monthly payments (due on the 5th day of the month, with the first monthly payment due on the later of (i) the date proposed for payments in Class 3 (above) and (ii) the 5th day of the month after the month in which the priority tax claimant's claim becomes an Allowed Claim) until the fifth anniversary of the Petition Date (i.e., July 1, 2031) (the "**Priority Tax Maturity Date**") (provided that the Debtor may prepay the balance of any such Allowed Priority Tax Claims, including accrued

interest if any, through the payment date). Any amount of the Allowed Priority Tax Claim that remains outstanding on Priority Tax Maturity Date shall be paid in full on that date; or

(b) the lesser amount or other treatment as the holder of an Allowed Priority Tax Claim and Debtor might otherwise agree .

Known Priority Tax Claims, if any, are estimated as of the Effective Date and shown on the Budget.

**7. Cure Costs**

Cure Costs associated with the assumed Executory Contracts will be paid by the Debtor or, otherwise, by the Reorganized Debtor as estimated and shown on the Budget.

**E. Classification and Treatment of Claims and Interests**

**[SEE ABOVE CLASSIFIED CLAIMS TREATMENT CHART]**

**F. Means of Implementation of the Plan**

**1. Funding of the Plan**

The Plan is a reorganizing Subchapter V Chapter 11 plan. The funds required for implementation of the Plan and the distributions hereunder shall be provided from Debtor's income earned as a doctor, as reflected on the Budget.

**2. The Reorganized Debtor**

The Plan will be administered by the Reorganized Debtor who will be vested with power and authority over all remaining assets of the Debtor and her Estate, and with the obligation to administer and consummate distributions in accordance with the Plan. The Reorganized Debtor shall be deemed as of the Confirmation of the Plan to be the general representative of the Estate as authorized under and pursuant to the Bankruptcy Code, including, without limitation, Section 1123(b)(3) of the Bankruptcy Code. The Reorganized Debtor shall be indemnified by the Estate for fees and costs, including attorneys' fees, for any actions that it takes or fails to take, except for those actions done with gross negligence or malicious intent.

**3. Powers of the Reorganized Debtor**

Except as otherwise provided in this Plan, the Reorganized Debtor shall be vested with and shall have all rights, powers, and duties that she had immediately prior to Confirmation under Sections 1183 and 1184 of the Bankruptcy Code and otherwise, including, without limitation, with respect to the Causes of Action (whether or not commenced as of Confirmation). The Reorganized Debtor shall have exclusive control of the Assets, including, without limitation, the Causes of Action. The Reorganized Debtor shall have authority to authorize the sale, abandonment, or other liquidation of the Assets. The Reorganized Debtor shall be the representative of the Estate and shall have the capacity to sue and be sued, as provided under Sections 323 and 1123(b)(3) of the Bankruptcy Code and provided otherwise under this Plan or the Bankruptcy Code.

**4. Overview of Duties of the Reorganized Debtor**

The Reorganized Debtor shall be empowered to and shall make all distributions required to be made under this Plan by the Reorganized Debtor and the Reorganized Debtor shall be authorized and empowered to fully act as of the Effective Date consistent with this Plan, including, without limitation, authorization to (a) prosecute, settle, or release all Causes of Action in accordance with the best interests of and for the benefit of the Creditors entitled to receive distributions under the Plan; (b) liquidate assets, including through any pending sale motions initiated by the Debtor, but not consummated as of the Effective Date or otherwise; (c) prosecute objections to Claims; (d) resolve Disputed Claims; (e) make distributions to the holders of Allowed Administrative Claims, Allowed Priority Tax Claims, and holders of other Allowed Claims (as their respective interests may appear in accordance with this Plan) in as prompt, efficient, and orderly a fashion as possible in accordance with the Plan; (f) perform administrative services related to the implementation of this Plan; (g) employ attorneys and other Professionals, as further set forth below, to assist in fulfilling the Reorganized Debtor's obligations under the Plan; and (h) otherwise act in accordance with this Plan and orders of the Bankruptcy Court.

**5. Plan Implementation Services**

The Reorganized Debtor shall be authorized to take such actions as she may deem necessary to perform her obligations under the Plan and may retain the services of Professionals necessary to assist and advise the Reorganized Debtor in the performance of her duties under the Plan, including, without limitation, lawyers, accountants, brokers, and auctioneers. Compensation and reimbursement of expenses earned and incurred by Professionals performing services for the Reorganized Debtor after the Confirmation Date shall be paid by the Reorganized Debtor monthly after rendition of bills to the Reorganized Debtor, and no further applications for compensation or reimbursement of expenses shall be necessary or required unless a dispute arises. In the event of any such dispute, the same shall be resolved by the Bankruptcy Court after notice and hearing.

**6. Monthly Operating Reports**

Through the entry of the Confirmation Order, the Debtor will file all Monthly Operating Reports within the times specified by the Office of the United States Trustee. The Debtor is not required to file Post Confirmation Reports because she filed under Subchapter V of the Bankruptcy Code.

**7. Tax Returns**

The Reorganized Debtor shall cause to be prepared and filed all federal, state, and local tax returns that are required to be filed by the Debtor that (i) have not been prepared or filed by the Effective Date or (ii) which fall due thereafter.

**8. Application for Final Decree**

The Debtor will seek its Final Decree as and when permitted by the Bankruptcy Code.

#### 9. Standard of Care for Debtor-in-Possession

Reorganized Debtor shall perform the duties and obligations imposed on Reorganized Debtor by this Plan with reasonable diligence and care under the circumstances.

#### 10. Subchapter V Trustee

**Appointment**. The Subchapter V Trustee was appointed by the United States Trustee in this case to perform the duties described in Section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

**Termination of the Subchapter V Trustee's Services**. The services of the Subchapter V Trustee shall terminate upon "substantial consummation" of the Plan, as defined in Section 1101(2) of the Bankruptcy Code. The Reorganized Debtor shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

**Compensation of the Subchapter V Trustee**. The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3). Debtor shall pay all compensation awarded to the Subchapter V Trustee as agreed by Debtor and the Subchapter V Trustee, provided that a Final Order has been entered approving the Trustee's application for compensation.

## IV. EXECUTORY CONTRACTS

### A. Assumption or Rejection of Executory Contracts

On the Confirmation Date, all Executory Contracts and unexpired leases, including, without limitation, those Executory Contracts listed in the Debtor's Schedules, that have not already been assumed by the Debtor will be deemed assumed in accordance with the provisions of Sections 365 and 1123, and any other relevant provisions, of the Bankruptcy Code

Nothing in this Plan requires payment of any Claim arising out of an Executory Contract that is disputed until all such disputes as to that Executory Contract are resolved.

### B. Cure Cost Claims

Any Cure Costs associated with the assumed Executory Contracts will be paid in full as shown on the Budget; provided, however, that any Cure Costs that are later determined to be allowed and not proposed to be paid under the Budget shall be paid in twelve (12) monthly installments, commencing on later of the Effective Date, the date agreed on by the Reorganized Debtor and the holder of the Cure Cost in question, or thirty (30) days after the entry of a Final Order allowing the Cure Cost in question. If there is a dispute, or a dispute arises, regarding: (i) the existence or amount of any Cure Costs; (ii) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed; or (iii) any other matter pertaining to the assumption, then the Debtor intends to attempt to resolve such dispute consensually and, failing

that, through an order of the Bankruptcy Court. Either party to the Executory Contract which is the subject of the dispute may, in its discretion, file with the Bankruptcy Court a request for determination of the dispute within sixty (60) days after the Effective Date. If a request for determination is timely-filed, then the dispute shall be litigated to Final Order and shall then be paid by as outlined above for Executory Contracts unless there is another consensual resolution by the parties to the Executory Contract.

**Any party to an Executory Contract that is the subject to such a dispute who does not file a request for determination within such sixty (60) day period will waive its rights with respect to such dispute and will be forever barred and estopped from prosecuting such dispute.**

### C. Rejected Contract; Rejection Claims

The following shall apply to any rejections: **Each other Person who is a party to an Executory Contract or unexpired lease rejected by the Debtor, including those rejected under this Plan, must File, by not later than 30 days after service of notice of entry of the Confirmation Order or by such other date as provided in the Confirmation Order, a Proof of Claim for any Rejection Claim, or be forever barred.** A copy of such Proof of Claim shall be Filed with the Court and served on the Reorganize Debtor, Counsel for the Reorganized Debtor, and the Sub V Trustee in accordance with the notice provisions of the Plan not later than 30 days after service of notice of entry of the Confirmation Order. If the Rejection Claim becomes an Allowed Claim, then such Claim shall be classified as an Unsecured Claim and paid in accordance with Class 11.

Objections to Rejection Claims must be Filed and served on the Claimant and upon the parties that were served with such Claims by the later of (a) 90 days after the Filing of the applicable Proof of Claim for such Rejection Claim and (b) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice or hearing.

## V. PROVISIONS GOVERNING PAYMENTS AND DISTRIBUTIONS

### A. Manner of Payment

Any payment in Cash to be made by the Reorganized Debtor, whether such payment is pursuant to confirmation under § 1191(a) or § 1191(b), shall be made, at the election of the Reorganized Debtor by check drawn on a domestic bank or by wire transfer from a domestic bank. **The Reorganized Debtor, rather than the Subchapter V Trustee, shall make the payments, notwithstanding whether the Plan is confirmed consensually.**

### B. Funds and Accounts for Payment of Claims and Plan Implementation

As soon as practicable after the Effective Date, the Reorganized Debtor shall or may, as applicable, establish, maintain, and manage funds and/or accounts to implement the Plan as follows:

### 1. Disputed Claims Reserve

As of and after the Effective Date, the Reorganized Debtor shall, if there are Disputed Claims that, collectively, are in excess of $25,000, establish and maintain an interest-bearing account which shall be called the Disputed Claims Reserve, into which the Reorganized Debtor shall deposit the distributions that would otherwise be due to holders of such Disputed Claims. Such Disputed Claims Reserve shall be maintained by the Reorganized Debtor until all of such Disputed Claims have been allowed or disallowed by Order of the Bankruptcy Court. Thereafter, any excess funds in the Disputed Claims Reserve shall be transferred back to the Reorganized Debtor.

### 2. Plan Expense Reserve

On the Effective Date, or as soon thereafter as reasonably practicable, the Reorganized Debtor may create out of any funds not subject to a lien a reserve for plan expenses, including costs necessary to adequately fund pursuit of Causes of Action which the Reorganized Debtor believes are likely to produce a recovery in excess of the costs of prosecution of such Causes of Action. The Reorganized Debtor may reserve and transfer an appropriate amount of Cash into such plan account as the Reorganized Debtor deems necessary and desirable to pay plan expenses efficiently and promptly.

### 3. Management of Accounts Established Pursuant to the Plan

Monies deposited into any accounts established and maintained by the Reorganized Debtor under the Plan shall be invested as specified in this paragraph and need not comply with Bankruptcy Code Section 345. Any accounts established by the Reorganized Debtor shall be established at a federally-insured financial institution or may be invested in government-backed securities in a brokerage account approved by the United States Trustee. For interest-bearing accounts, any interest earned upon balances on deposit in such accounts shall be used to fund the Plan. The Reorganized Debtor may relocate any or all accounts to another federally-insured financial institution or approved brokerage account, from time to time, until all payments provided for under the Plan have been made. Following all distributions required herein, all remaining funds shall be property of the Reorganized Debtor.

## C. Additional Distribution Provisions

### 1. Payment of Claims and Interests

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall make no distribution to holders of Claims that are not Allowed Claims as defined in the Plan. Notwithstanding any other provision of the Plan, the Reorganized Debtor shall have discretion to make the distributions called for under the Plan at the times specified in the Plan or earlier if she deems such earlier distribution to be necessary or beneficial.

### 2. Unclaimed Distributions

Under the Plan, payment will be stopped on checks disbursed by the Reorganized Debtor to holders of Allowed Claims if such checks remain not cashed ninety (90) days after the date of

disbursement. The Cash represented by such checks shall become property of the Reorganized Debtor pursuant to Section 347(b) of the Bankruptcy Code.

### 3. Rounding of Dividend Amounts

Notwithstanding any other provision of the Plan, the Reorganized Debtor shall not be required to make any distribution of less than $15.00 or such other dollar limitation imposed by the Bankruptcy Code or applicable Bankruptcy Rules to the holder of any Allowed Claim and may round all distributions to the nearest $1.00.

### 4. Distributions to the Last Known Address

Distributions to holders of Allowed Claims will be sent to the last known address set forth on such holder's Proof of Claim Filed with the Court or, if no Proof of Claim has been filed, the address listed on the Schedules. Holders of Claims may change the address to which distributions, if any, will be sent by furnishing written notice to the Reorganized Debtor in accordance with Section XV.M. A proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date. U.S. Postal notifications of changes of address will be honored, provided that the Reorganized Debtor shall have no obligation to investigate the address of the holder of an Allowed Claim following expiration of such U.S. Postal notifications.

If any holder's Distribution is returned as undeliverable, no further Distribution to such holder shall be made unless and until the Reorganized Debtor is notified by such holder in writing of such holder's then-current address, at which time the Reorganized Debtor shall recommence Distributions to such holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by the Reorganized Debtor and (ii) such holder shall waive its right to such Distributions.

All Distributions returned to the Reorganized Debtor and not claimed within six (6) months of return shall be irrevocably retained by the Reorganized Debtor notwithstanding any federal or state escheat laws to the contrary. If any Distribution on an Unsecured Claim ("**Unsecured Distribution**") is tendered by the Reorganized Debtor to a holder of an Unsecured Claim and returned, refused, or otherwise improperly returned ("**Unsecured Distribution Refusal**"), the Reorganized Debtor shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, the Reorganized Debtor shall be relieved of any obligation to make said payment or Distribution and the Reorganized Debtor are relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("**Secured or Priority Distribution**") is tendered by the Reorganized Debtor to a holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("**Secured or Priority Distribution Refusal**"), the holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied.

In the event of a Secured or Priority Distribution Refusal, any obligation of the Reorganized

Debtor to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to the Reorganized Debtor that the holder of such Secured Claim or Priority Claim seeks to receive payments from the Reorganized Debtor on the Secured Claim or Priority Claim or otherwise seeks to enforce the Reorganized Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "**Tolling Period**"). Only in the event of such notice to the Reorganized Debtor shall the Reorganized Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume.

The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the Court.

Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Reorganized Debtor or her Assets shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, the Reorganized Debtor shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and the Reorganized Debtor shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

**5. Assignment of Claims**

Notwithstanding Bankruptcy Rule 3001(e), written notice of any assignment of an Allowed Claim shall be given to the Reorganized Debtor by the assignee thereof before the Reorganized Debtor shall be obligated to direct distributions to such assignee. Absent receipt by the Reorganized Debtor of such written notice of assignment, neither the Reorganized Debtor nor the Estate shall have any liability to any such assignee or to any other Person on account of a misdirected distribution.

**6. Withholding or Other Taxes**

Any federal, state, or local withholding or other taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to affect the withholding of such taxes.

**7. Setoffs**

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, setoff against any Claim the payments or other distributions to be made pursuant to the Plan in respect of such Claim for claims of any nature whatsoever Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release

by Debtor or Reorganized Debtor, as applicable, of any such Claim or other Claims, rights, or Causes of Action that the Debtor or the Reorganized Debtor may have against such holder.

#### 8. Subordination Rights

All subordination rights, claims, and defenses of Debtor and Reorganized Debtor shall remain valid, enforceable, and unimpaired in accordance with Section 510 of the Bankruptcy Code or otherwise, except as otherwise specifically provided in the Plan.

#### 9. No Interest

Except as expressly stated in the Plan or as allowed by the Bankruptcy Court, no interest, penalty, or late charge arising after the Petition Date, or related expenses or disbursements arising after the Petition Date, will be allowed on or in connection with any Claim. This provision will apply whether the distribution on such Claim is made on the Effective Date or thereafter.

## VI. ALLOWANCE AND DISALLOWANCE OF CLAIMS

Except as expressly provided in this Plan, the Reorganized Debtor after Confirmation will have and retain any and all rights and defenses that the Debtor had with respect to any Claims as of the Petition Date, including the Causes of Action and the Filing of any motions or other pleadings for estimation of the amount of Disputed Claims.

### A. Examination and Objections to Claims

#### 1. Examination

Following the Effective Date, the Reorganized Debtor shall examine all Claims not previously objected to by the Debtor and shall have the responsibility of filing objections to the allowance of such Claims (if warranted, as determined by the Reorganized Debtor in its business judgment) and continuing prosecutions of objections to Claims filed prior to the Effective Date.

#### 2. Objection Deadlines

Except as otherwise specified herein (including, without limitation, with respect to Administrative Claims, Fee Claims, and Cure Cost Claims), objections to Claims shall be Filed with the Bankruptcy Court and served upon Creditors by the Claims Objection Bar Date.

After an order, judgment, decree, or settlement agreement allowing a Disputed Claim becomes a Final Order, Distributions with respect to and on account of such previously Disputed Claim will be made on or before the time of the next scheduled distribution to holders of Allowed Claims in the Class in which the previously Disputed Claim is allowed.

### B. Claims Resolution

Objections to Claims may be litigated to judgment, settled, or withdrawn by the Reorganized Debtor.

**1. Settlement of Disputed Claims over $100,000.00**

Any proposed settlement of a Disputed Claim where the original face amount of the Claim is more than $100,000 shall be subject to the approval of the Bankruptcy Court after 21-days' notice and an opportunity for a hearing has been served on the Special Notice Parties.

**2. Settlement of Disputed Claims between $50,000 and $100,000**

The Reorganized Debtor may settle any Disputed Claim where the original face amount of such Claim is between $50,000 and $100,000 without Bankruptcy Court approval, provided that the Special Notice Parties shall have had 14-days' notice of any such proposed settlement prior to consummating the settlement. If an objection to the proposed settlement is served on the Reorganized Debtor and not resolved consensually within 14 additional days after expiration of the 14-day notice period, then the Bankruptcy Court shall determine whether such proposed settlement should be approved.

**3. Settlement of Disputed Claims of less than $50,000**

If the original face amount of the Disputed Claim is less than $50,000, then Reorganized Debtor has authority to settle such Claim without any notice or approval of any other party.

**C. Estimation of Claims**

The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Claim pursuant to Section 502(c) of the Bankruptcy Code, as applicable, regardless of whether Debtor or Reorganized Debtor previously have objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during the litigation concerning any objection to any Claims, including, without limitation, during the pendency of any appeal relating to any such objection.

Subject to the provisions of Section 502(j) of the Bankruptcy Code, if the Bankruptcy Court estimates any contingent or unliquidated Claim, then the amount so estimated shall constitute the Allowed amount of such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, then the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.

All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

## VII. VOTING PROCEDURES AND REQUIREMENTS

This section describes the procedures pursuant to which the Plan will or will not be confirmed.

### A. Eligibility to Vote

The Debtor is soliciting acceptances of the Plan from each Class of Creditors identified in this Plan as an "impaired" class (the "**Voting Classes**"). **Classes in which no vote is cast will be deemed to have accepted the Plan.**

A claim is considered an "**Allowed Claim**" if (i) the Debtor's schedules filed in the Case do not list the Claim as being "disputed," "contingent," or "unliquidated" or (ii) a claimant filed a Proof of Claim by the Proof of Claim Bar Date. If a claimant has filed a Proof of Claim, it will be an "Allowed Claim" unless a written objection is filed by the Debtor or the Reorganized Debtor.

If you have any question concerning whether your Claim is an "Allowed Claim," then contact the attorneys for the Debtor at the address shown on the first page of this Plan.

This Plan is being sent to all holders of Unclassified Claims, Creditors, and Interest holders, whether or not entitled to vote. Under Section 1141(a) of the Bankruptcy Code, the Plan, if approved ("**Confirmed**") by the Bankruptcy Court, will bind all parties, whether or not such parties are entitled to vote for or against the Plan and whether or not such parties have voted or not voted.

### B. Ballots and Voting Deadlines

#### 1. Ballots

You will receive a Ballot along with a copy of this Plan. All votes to accept or reject the Plan must be cast by using the Ballot. No other votes will be counted.

Please fill out the Ballot and return it to the Bankruptcy Court at the address listed below:

Clerk, United States Bankruptcy Court
Middle District of Georgia
P.O. Box 1957
Macon, Georgia 31202

DO NOT RETURN ANY INVOICES, SECURITIES, NOTES, OR PROOFS OF CLAIM WITH YOUR BALLOT.

If delivery is by mail, then enough time should be allowed to ensure timely delivery to and actual receipt by the Bankruptcy Court by the Voting Deadline.

The Debtor in her sole discretion may waive an objection to Ballots filed after the Voting Deadline or related to Disputed Claims. Otherwise, such Ballots will not be counted unless ordered otherwise by the Bankruptcy Court.

If a Ballot is signed by trustees, executors, administrators, guardians, attorneys-in-fact, officers of corporations, or others acting in a fiduciary or representative capacity, then such persons should indicate such capacity when signing.

#### 2. Revocation of Ballots

Ballots to accept or reject the Plan may be revoked or changed only with the approval of the Bankruptcy Court.

#### 3. Incomplete Ballots

Any Ballot received which is unsigned or does not indicate either an acceptance or a rejection of the Plan will not be counted. Incomplete ballots may be amended by the holder of the Claim on account of which the Ballot is cast to cure the deficiency, provided that the amendment is filed before the beginning of the hearing on confirmation of the Plan.

#### 4. Voting Multiple Claims

Persons holding Claims in more than one Class will vote such Claims in each Class.

### C. Confirmation Hearing

The Confirmation Hearing may be adjourned from time to time by additional notice prior to the hearing, or by announcement in Bankruptcy Court on the scheduled date of the hearing. At the Confirmation Hearing, the Bankruptcy Court will (i) hear and determine objections, if any, to the Plan and to confirmation of the Plan that have not been previously disposed of, and (ii) determine whether to confirm the Plan. All objections, if any, to confirmation of the Plan must be filed with the Bankruptcy Court and served pursuant to the accompanying Order.

## VIII. FINANCIAL INFORMATION

The Debtor filed Schedules with the Bankruptcy Court as required by the Bankruptcy Code. The Debtor will supplement and amend her Schedules as necessary and appropriate from time to time. The Debtor has also been filing Monthly Operating Reports and will continue to do so through the Confirmation Date. This financial information has not been included in this Plan but may be examined at office of the Clerk of the Bankruptcy Court, U.S. Bankruptcy Court, Middle District of Georgia, 433 Cherry Street, Macon, Georgia 31201 or online through PACER at http://www.pacer.gov/.

## IX. ACCEPTANCE AND CONFIRMATION

### A. Acceptance of Plan

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of Section 1191 of the Bankruptcy Code are met.

Holders of Claims in Impaired Classes are entitled to vote to accept or reject the Plan.

### B. Feasibility

As a condition to confirmation of the Plan, Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation of the

Reorganized Debtor unless such liquidation is proposed in the Plan. This requirement is addressed further below.

### C. "Best Interests of Creditors" Test; Liquidation Analysis

Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired Class of claims or interests, that such Class either accept the Plan or that each holder in such Class "will receive or retain under the plan on account of such claim or interest, property of a value as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

Debtor submits that payments proposed under the Plan will result in a dividend that is **greater than what could be expected if Debtor's assets were "liquidated under Chapter 7."**

The Liquidation Analysis attached on **Exhibit A** represents Debtor's projection of the liquidation value of Debtor's assets under Chapter 7, as of the Effective Date. As shown on Exhibit A, a hypothetical Chapter 7 liquidation would result in a distribution to unsecured creditors that is less than the distribution to unsecured creditors that is proposed in the Plan. Thus, the Debtor believes that the proposed Plan satisfies the "Best Interest of Creditors" Test under 11 U.S.C. § 1129(a)(7).

## X. FEASIBILITY

The Debtor's budget is attached as **Exhibit B** (the "**Budget**"). The Budget projects sufficient receipts to make payments on all Allowed Claims in each Class. Because the projections are based on averages, the actual results will probably vary from the projection. There will be no event of default under the Plan if the Reorganized Debtor fails to meet her projected results in a given year.

The Debtor believes that the Plan is feasible, fair, and equitable, and provides the best potential for payment of all Claims.

## XI. CERTAIN TAX CONSEQUENCES

THE CONFIRMATION AND EXECUTION OF THE PLAN MAY HAVE TAX CONSEQUENCES TO HOLDERS OF CLAIMS AND INTERESTS AND TO THE DEBTOR. THE INCOME TAX LAWS APPLICABLE TO RECEIVING A DISTRIBUTION OR DEDUCTING A LOSS FROM A BANKRUPT ESTATE ARE COMPLEX. DEBTOR HAS NOT REQUESTED A RULING FROM THE INTERNAL REVENUE SERVICE NOR HAS THE DEBTOR OBTAINED AN OPINION OF COUNSEL WITH RESPECT TO THE TAX CONSEQUENCES OF THE PLAN FOR CREDITORS OR THE DEBTOR. THUS, NO ASSURANCE CAN BE GIVEN AS TO THE TAX CONSEQUENCES OF THE PLAN. NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN AS TO ANY HOLDER OF A CLAIM OR ANY OTHER ENTITY OR PERSON. EACH HOLDER OF A CLAIM SHOULD CONSULT ITS TAX PROFESSIONAL TO UNDERSTAND FULLY THE FEDERAL, STATE, AND LOCAL TAX CONSEQUENCES OF THE PLAN.

## XII. EFFECT OF CONFIRMATION

### A. Vesting of Debtor's Assets

**All property comprising the Estate (including Causes of Action and the Assets) (collectively, "Property of the Estate") shall revest in the Reorganized Debtor only if and to the extent provided in the Bankruptcy Code (including, without limitation, 11 U.S.C. § 1186). All Property of the Estate shall, upon conformation of the Plan and in accordance with 11 U.S.C. § 1141(c), be free and clear of all Claims, liens, charges, encumbrances, rights and Interests of Creditors and Equity Interest Holders, as the Plan deals with all Property of the Estate. This Plan, if confirmed, will evidence the release of any and all liens or encumbrances against all Property of the Estate of the Debtor, unless such lien or encumbrance is specifically retained in the Plan.**

### B. Discharge of Reorganized Debtor

**The effects of Confirmation of the Plan shall be as provided under Bankruptcy Code, which applicable provisions of the Bankruptcy Code are hereby incorporated into the Plan by this reference, including, without limitation, all applicable provisions and subparts of its Section 1141 in a Subchapter V bankruptcy case, its Section 524 (Effect of Discharge), and its Section 1192 (Discharge Under Subchapter V). Specifically:**

#### 1. Discharge if Plan Confirmed Under Section 1191(a).

If this Plan is confirmed under Section 1191(a), then, on the Effective Date, the Debtor and the Reorganized Debtor will be discharged respectively from any debt that arose before Confirmation of this Plan, to the extent specified in Section 1141(d)(1)(A) of the Bankruptcy Code. The Debtor and the Reorganized Debtor will not be discharged from any debt (i) imposed by this Plan or (ii) excepted from discharge under Section 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

#### 2. Discharge if Plan Confirmed Under Section 1191(b).

If the Plan is confirmed under Section 1191(b), then Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in Section 1192 of the Bankruptcy Code. The Debtor and the Reorganized Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in Section 1192 or (ii) excepted from discharge under Section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### C. Terms Binding

Upon the entry of the Confirmation Order, all provisions of the Plan, including all agreements, instruments and other documents filed in connection with the Plan and executed by the Debtor or the Reorganized Debtor in connection with the Plan, will be binding upon the Debtor,

the Reorganized Debtor, all Claim and Interest holders, and all other Persons that are affected in any manner by the Plan. All agreements, instruments, and other documents filed in connection with the Plan will have full force and effect and will bind all parties thereto as of the entry of the Confirmation Order, whether or not such exhibits actually will be executed by parties other than the Debtor or the Reorganized Debtor, or will be issued, delivered or recorded on the Effective Date or thereafter.

All Pre-petition contracts, undertakings, and obligations of the Reorganized Debtor, other than to holders of Claims in Classes that are unimpaired under the Plan, are deemed novated by the terms of the Plan. No default shall be deemed to exist under any such novated obligations as of the Effective Date of the Plan, and notwithstanding the delay of discharge in this case, no holder of any claim may exercise any right upon default with respect to the Reorganized Debtor, the Assets, or otherwise until the occurrence of a default under the Plan.

**D. Continuation of Pre-Confirmation Injunction or Stays**

All injunctions or stays, whether by operation of law or by order of the Bankruptcy Court, provided for in the Bankruptcy Case pursuant to Sections 105, 362, or 525 of the Bankruptcy Code or otherwise that are in effect on the Confirmation Date or imposed by the Confirmation Order shall remain in full force and effect until the Final Decree.

**E. Post-Confirmation Effects of Evidences of Claims or Interests**

On the Effective Date, except as otherwise provided in the Plan, all promissory notes, share certificates, warrants, membership interests, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim or Interest in or against the Debtor will represent only the right, if any, to participate in the distributions contemplated by the Plan.

**F. Exculpation and Limitation of Liability**

The Debtor and, as applicable, each of h members, shareholders, officers, directors, employees, agents, attorneys, representatives, professionals, and other estate fiduciaries (collectively, the "**Exculpated Persons**") shall neither have nor incur any liability to any Person or Entity for any act taken or omitted to be taken (from the Petition Date to the occurrence of the Effective Date of this Plan) in formulating, negotiating, preparing, disseminating, or confirming this Plan or any contract, instrument, release, or other agreement or document that the Plan contemplates will be created and entered into in connection with the Plan (including, without limitation, failure to satisfy any condition or conditions, or refusal to waive any condition or conditions). Provided, however, that the foregoing provisions of this paragraph shall have no effect on the liability of any Exculpated Person that results from any such act or omission that is determined in a Final Order to have constituted fraud, bad faith, willful misconduct, gross negligence, or a willful disregard of duties imposed by the Plan.

## XIII. RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Debtor and the Reorganized Debtor, as applicable, and the Bankruptcy Case is closed by Final Decree, the Bankruptcy Court shall have and retain the maximum jurisdiction as is legally permissible, including, without limitation, jurisdiction over the Assets, the Debtor, the Reorganized Debtor, and the Estate, including, without limitation, for the following purposes:

(a) Claims. To determine the allowance, classification, validity, priority of, or any dispute with respect to Claims against Debtor upon motion by the Reorganized Debtor or any other party-in-interest;

(b) Injunction, etc. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person; to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court; to issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and all matters referred to herein; and to determine all matters that may be pending before the Bankruptcy Court in the Bankruptcy Case on or before the Effective Date with respect to any Entity;

(c) Professional Fees. To determine, before or after the Effective Date, any and all applications for allowance of compensation and expense reimbursement of Professionals for services rendered before the Confirmation Date, as provided for in this Plan;

(d) Certain Priority Claims; Administrative Claim. To determine any Priority Tax Claims, other priority claims, or any request for payment of Administrative Claims;

(e) Dispute Resolution. To resolve any dispute arising under or related to the implementation, execution, consummation, or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of professional fees and expenses of the Reorganized Debtor;

(f) Leases and Executory Contracts. To determine the allowance of any Claims or other disputes resulting from the rejection of Executory Contracts and unexpired leases;

(g) Actions. To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Bankruptcy Case, including the determination of all controversies and disputes arising under and in connection with the Debtor's Assets, the Causes of Action, and any remands;

(h) Plan Modification. To modify the Plan under Section 1193 of the Bankruptcy Code or other applicable provision of the Bankruptcy Code and remedy any

defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i) Aid Consummation. To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code;

(j) Implementation of Confirmation Order. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(k) General Matters. To determine all such other matters, and for such other purposes, as may be provided in the Confirmation Order or the Plan, or as otherwise may be authorized or not inconsistent with the provisions of the Bankruptcy Code;

(l) Final Decree. To enter an order and/or Final Decree closing the Bankruptcy Cases.

## XIV. PRESERVATION OF CAUSES OF ACTION

### A. Rights with Regard to Causes of Action

Upon the occurrence of the Effective Date, all Causes of Action of the Debtor and the Estate will be retained and preserved for enforcement by the Reorganized Debtor. The Reorganized Debtor will have the power and right to commence or continue and otherwise enforce any Causes of Action of the Debtor and/or the Estate, all of which will be retained and preserved hereby, notwithstanding Confirmation or consummation of the Plan.

Unless Causes of Action, including, without limitation, objections to allowance of claims, against a Person or Entity are expressly waived, relinquished, released, compromised, or settled in the Plan or by any Final Order, the Debtor, the Reorganized Debtor, and Estate, on behalf of themselves and holders of Allowed Claims and in accordance with Bankruptcy Code Section 1123(b)(3)(B), expressly reserve and will retain for enforcement post-Confirmation and post-consummation all Causes of Action and unknown Causes of Action, including, without limitation, the Causes of Action described in this Plan, as well as any other Causes of Action or unknown Causes of Action that the Debtor or the Estate have or had the power to assert immediately before Confirmation, for adjudication or later adjudication, and, therefore, no waiver or preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches will apply to such Causes of Action upon or after the Confirmation or consummation of the Plan solely due to such Confirmation or Consummation of the Plan.

Additionally, the Debtor and the Estate expressly reserve and retain the right to object to the allowance of any Claim or pursue or adopt or otherwise enforce (and the right of the Reorganized Debtor to do so) any claims. Nothing contained in this Plan or any related document will constitute a waiver of the rights, if any, of the Debtor, the Reorganized Debtor, or the Estate,

through the Reorganized Debtor, to a jury trial with respect to any Cause of Action or objection to any Claim or Interest.

Potential Causes of Action currently being investigated by the Debtor, which may, but need not be, pursued by the Debtor prior to the Effective Date and by the Reorganized Debtor after the Effective Date as warranted but which will be retained after Confirmation include, without limitation, the following:

> **Causes of Action**. All Causes of Action, whether legal, equitable, or statutory in nature, arising out of, or in connection with the Debtor or her operations, including, without limitation, the following: possible claims against vendors, assignees, suppliers, general contractors, or subcontractors for warranty, indemnity, back charge/set-off issues, overpayment or duplicate payment issues; deposits or other amounts owed by any creditor, lessor, utility, supplier, vendor, assignee, or other Person or Entity; employee, management or operational matters; claims against assignees arising from the various leases and assignment agreements relating thereto, including, without limitation, claims for overcharges, maintenance, and other similar charges; financial reporting; environmental matters; actions against insurance carriers relating to coverage, indemnity or other matters; actions against current or former officers, directors, employees, parents, subsidiaries, or Affiliates; counterclaims and defenses relating to notes or other obligations; and contract or tort claims which may exist or subsequently arise;

> **Avoidance Actions**. Any and all avoidance actions pursuant to any applicable section of the Bankruptcy Code, including, without limitation, Sections 544 (including, but not limited to, all Causes of Action arising under State law and maintainable under Section 544 of the Bankruptcy Code), 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, and other similar state laws such as fraudulent conveyance and preference statutes, arising from any transaction involving or concerning the Debtor; and

> **Any and all other Claims and Causes of Action of the Debtor**. In addition, there may be other Causes of Action which currently exist or may subsequently arise that are not set forth in the Plan because the facts upon which such Causes of Action are based are not currently or fully known by the Debtor and, as a result, cannot be raised during the pendency of the Chapter 11 Case (collectively, the "**Unknown Causes of Action**"). The failure to list any such Unknown Cause of Action herein or in other Plan documents is not intended to and will not limit the rights of the Reorganized Debtor to pursue any Unknown Cause of Action to the extent the facts underlying such Unknown Cause of Action subsequently become fully known to the Debtor or the Reorganized Debtor or other parties in interest.

The Statements of Financial Affairs filed in the Bankruptcy Case reflects potential preferential payments, if any, based on the presumption of the insolvency of the Debtor during the 90 days preceding the Petition Date under 11 U.S.C. § 547. If you received a payment or other transfer within 90 days of the bankruptcy, then such transfer may be subject to avoidance under the Bankruptcy Code, including its Sections 544, 547, and 550. The Debtor will continue to review her books and records for any of such payments and amend its Statement of Financial Affairs to

reflect any such payments. **However, if you received such a payment, then, notwithstanding that such payment might not be currently listed on the Statement of Affairs or itemized in this Plan, you are deemed to be on notice of such payment based on your receipt of it and to be on notice of any potential avoidance suit to recover it**. Such a payment is potentially avoidable as a preference under Section 547 of the Bankruptcy Code. The Bankruptcy Code provides defenses against the forced repayment of such a payment, including, but not limited to, that such payment was in the ordinary course of business of both the debtor and the transferee, that the debtor was solvent on the date the payment was made, or that new value was provided at or about the same time as the payment.

Finally, attached as **Schedule 3** is a list of creditors and other parties-in-interest who have transacted with the Debtor over the 90 day period prior to the Petition Date. Such parties could be subject to avoidance actions as defendants in actions brought by the Debtor or the Reorganized Debtor. Schedule 3 is intended solely to provide information to potential voting creditors so that they can make an informed vote and to make sure that such claims are preserved in favor of the Debtor and the Reorganized Debtor. The recitation is subject to change, revision, and expansion, and is not intended to reflect a definitive list of potential Causes of Action.

### B. Representative of the Estate

In accordance with Section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the Debtor, Reorganized Debtor, or Estate may hold or have the power to commence at any time against any Person or Entity will be preserved and retained and enforced by the Reorganized Debtor, and the Reorganized Debtor will have the right to continue or commence or otherwise enforce, as the authorized representative of the Debtor, the Estate, and Reorganized Debtor, any and all such Claims, rights, or Causes of Action. The Reorganized Debtor may pursue any and all such Claims, rights, or Causes of Action, as appropriate, in accordance with the best interests of the Debtor and the holders of Allowed Claims. Subject to the provisions of the Plan, the Reorganized Debtor will have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Claims, rights, and Causes of Action.

## XV. MISCELLANEOUS PROVISIONS OF THE PLAN

### A. Conditions to Confirmation

The following are conditions precedent to Confirmation of the Plan: the Confirmation Order shall have been signed by the Bankruptcy Court and entered by the Clerk of the Bankruptcy Court.

### B. Conditions to the Occurrence of the Effective Date

In addition to the other conditions set out in the definition of the "Effective Date," a condition precedent to the occurrence of the Effective Date is that the Confirmation Order shall have been entered, the time for appeal shall have passed, and such Confirmation Order shall not have been stayed pending any appeal.

**C. Waiver of Conditions**

Debtor may agree to waive any of the conditions precedent set forth above in writing executed by Debtor.

**D. Plan Modification**

The Plan may be altered, amended, or modified by the proponent before the Confirmation Date as provided in Section 1193 of the Bankruptcy Code.

**1. Pre-Confirmation Modification.**

Debtor may modify the Plan at any time before the Confirmation Hearing by filing the modification with the Court.

**2. Modification After Confirmation And Prior to Substantial Consummation.**

After Confirmation and before substantial consummation, Debtor may modify the Plan upon a showing that circumstances warrant such a modification and after a notice and hearing. If the Plan was confirmed under Section 1191(a), any holder of a Claim or Interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless, within the time fixed by the Court, such holder changes its previous acceptance or rejection.

**3. Modification After Substantial Consummation.**

If the Plan has been confirmed under Section 1191(b), Debtor may modify the Plan upon a showing the circumstances warrant such a modification and after a notice and hearing.

**E. Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, the Confirmation Order, and any sale orders entered in the Bankruptcy Case, the transfer or making or delivery of any instrument whatsoever in furtherance of or in connection with the Plan, including, without limitation, any transfer of the Assets, subsequent transfers to creditors or purchaser(s), and any assignments, documents, instruments, and agreements and other conveyance documents executed and delivered by the Reorganized Debtor in connection with the sale of the Assets in furtherance of the implementation of the Plan or otherwise shall not be subject to any stamp, real estate transfer, personal property, recording, or other similar tax. Any conveyance of real property made as provided under this Plan or in furtherance of this plan shall include the notation: "*This instrument is exempt from Transfer Taxes by virtue of 11 U.S.C. § 1146(a)*."

**F. Events of Default**

Unless otherwise specifically provided in a class under the Plan, in the event of a default by the Reorganized Debtor in payments under the Plan or otherwise to the holder of an Allowed

Claim, the holder must send written notice ("**Default Notice**") to the Reorganized Debtor at the addresses for the Reorganized Debtor listed in this Plan unless the Reorganized Debtor has provided the holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that the Reorganized Debtor has fourteen (14) business days (in the case of a monetary default) and thirty (30) business days (in the case of a non-monetary default) from receipt by the Reorganized Debtor and her counsel of the Default Notice to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default).

The holder must send such Default Notice to the Reorganized Debtor via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to G. Daniel Taylor (Stone & Baxter, LLP) at the address reflected in this Plan and below. In the event that the Plan is confirmed under Section 1191(b) and the Subchapter V Trustee's appointment has not been terminated, the holder must also provide a copy of the Default Notice to the Subchapter V Trustee at the address reflected in this Plan or on the docket for the Bankruptcy Case.

The Reorganized Debtor shall have fourteen (14) business days or thirty (30) business days (as applicable) from the Reorganized Debtor's and her counsel's receipt of the Default Notice to cure such default. Receipt by the Reorganized Debtor's counsel or the Subchapter V Trustee, alone, shall not be deemed receipt by the Reorganized Debtor of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 2).

### G. Remedies Upon Default

Any uncured "default," as defined above, shall entitle the holder of Allowed Claims affected thereby (i) pursue the remedies provided under the Bankruptcy; (ii) pursue the remedies provided under any instrument executed and delivered in furtherance of this Plan; (iii) pursue the remedies provided under applicable non-bankruptcy law; and (iv) initiate a collection action, in law or in equity, to enforce against the Reorganized Debtor who has allegedly defaulted that Reorganized Debtor's obligations under the Plan. Any suit in law or equity may be brought only in either the Bankruptcy Court or in any court of competent jurisdiction in Bibb County, Georgia. Such remedies are consistent and compliant with Section 1191(c)(3).

### H. Final Decree

Any Final Decree or Final Decrees shall be sought and entered only in accordance with the Bankruptcy Code .

### I. Effectuating Documents and Further Transactions

The Debtor, the Reorganized Debtor, and all holders of Allowed Claims receiving distributions under this Plan, and all other parties in interest shall, from time to time, prepare,

execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**J. Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Confirmation Order shall continue to be in effect. The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by Debtor or the Reorganized Debtor, as the case may be, shall not be and shall not be deemed to be an admission or waiver of any rights of Debtor or the Reorganized Debtor with respect to the holders of Claims or otherwise.

**K. Successors and Assigns**

The rights, benefits, and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entities.

**L. Governing Law**

Except to the extent that the Bankruptcy Code is applicable or preempts state law, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of Georgia.

**M. Notices**

Unless a recipient of a notice required under this Plan has consented to receive such notice electronically, all notices, requests, or other communications, required or permitted to be made in accordance with this Plan, including any change of address of any Person for the purpose of receiving distributions, shall be in writing and shall be delivered (a) personally, (b) by facsimile or email (confirmed by first class mail or express mail), or (c) mailed by first class mail.

Any such notice shall be deemed to have been given when received or, if mailed by first class mail, seven days after the date of mailing, postage prepaid, or, if express mailed, the next business day after the date of mailing, or if sent by facsimile or email, upon confirmation of receipt by the recipient; provided, however, that a proper notice of change of address will be effective for a distribution if received at least 30 days in advance of such distribution date.

Notices should be addressed as follows:

If to the Debtor or the Reorganized Debtor:

Allison Belinda Burkett
207 Twisted Laurel Lane
Bonaire, Georgia 31005

With a copy to:

Stone & Baxter, LLP
577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
Attn: David L. Bury, Jr. and E. Tate Crymes
dbury@stoneandbaxter.com;
tcrymes@stoneandbaxter.com

If to the Subchapter V Trustee:

Jenny Martin Walker
Adams, Hemingway, Wilson & Rutledge, LLC
P.O. Box 1956
544 Mulberry Street, Suite 1000
Macon, Georgia 31202-1956
Trustee.jmw@adamshemingway.com

If to any holder of an Administrative Claim, a Priority Tax Claim, or a Claim of any Class, at their last known address set forth on a Proof of Claim or on the Schedules if no Proof of Claim has been filed.

If to any other Persons entitled to notice, at the respective addresses that such Persons entitled to notice have provided to the Reorganized Debtor.

Any party may change the address at which it is to receive notices under the Plan by furnishing written notice pursuant to these notice provisions to the Entity to be charged with knowledge of such changes.

### N. Conflicts

To the extent that any provision of any documents executed in connection with the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflicts with or is in any way inconsistent with the terms of this Plan, the terms and provisions of this Plan shall govern and control.

### O. Severability

If, following Confirmation of this Plan, any provision of this Plan is determined to be unenforceable in whole or in part, either facially or applied, such determination shall in no way limit or affect the enforceability or operative effect of any other provision of the Plan or require the re-solicitation of any acceptance or rejection of the Plan, unless, in the absence of such provision, this Plan would fail of its essential purpose, as determined by the Bankruptcy Court.

## XVI. ALTERNATIVES TO CONFIRMATION/CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, then the alternatives include (a) liquidation

of the Debtor under Chapter 7 of the Bankruptcy Code or (2) conversion or dismissal of the Debtor's Bankruptcy Case. The Debtor believes that if the Plan is not confirmed, then holders of Allowed Claims could receive a smaller dividend than proposed under the Plan or receive such dividend at a later date than proposed in the Plan.

### A. Conversion to and Liquidation under Chapter 7 before Confirmation

If no plan can be confirmed, then the Chapter 11 Case may be converted to a case under Chapter 7 of the Bankruptcy Code. As explained above, the liquidation of the Debtor's assets could result in distressed or delayed recoveries and could therefore reduce the recovery to all creditors. The Debtor also believes that the conversion of the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code and the appointment of a Chapter 7 trustee would increase the costs of administration and reduce and postpone any distribution to holders of Allowed Claims. A liquidation analysis is attached to this Plan as **Exhibit A**.

For all of the foregoing reasons, the Debtor has concluded that Creditors are likely to receive an amount under the Plan that is greater and more quickly paid than the amount that such Creditors would receive in a Chapter 7 liquidation.

### B. Conversion to Chapter 7 after Confirmation

If this Case is converted to a case under Chapter 7 of the Bankruptcy Code after Confirmation, then all of the Debtor's legal or equitable interests, as of the date of conversion, in property that would have been property of the Estate had the property of the Estate not vested in the Debtor by virtue of Confirmation of the Plan, shall be property of the Estate for purposes of the Chapter 7 case, notwithstanding the vesting of the property of the Estate in the Debtor that otherwise arises upon Confirmation of the Plan; and, by way of illustration and not limitation, such property shall include all proceeds held by the Debtor, on the date of conversion, of property that was property of the Estate prior to Confirmation of the Plan.

## XVII. SOLICITATION

This Plan is submitted by the Debtor in compliance with her obligations under the Bankruptcy Code to provide "adequate information" to enable you to reach an informed decision regarding whether it is in your best interest to vote to accept the Plan.

## XVIII. RECOMMENDATIONS BY THE DEBTOR

The Debtor urges all holders of Claims and Interests to carefully consider this Plan and vote to accept the Plan by completing and submitting the enclosed Ballot.

IN WITNESS WHEREOF, the undersigned have caused this Plan to be duly executed as of the date written below, which execution may be in multiple identical counterparts.

Dated this the 29th day of September, 2026.

*/s/ Allison Belinda Burkett, M.D.*
Allison Belinda Burkett, M.D.

**STONE & BAXTER, LLP**
By:

*/s/David L. Bury, Jr.*

David L. Bury, Jr.
Georgia Bar No. 133066
E. Tate Crymes
Georgia Bar No. 486812
*Counsel for the Debtor*

577 Third Street
Macon, Georgia 31201
(478) 750-9898; (478) 750-9899 (fax)
dbury@stoneandbaxter.com
tcrymes@stoneandbaxter.com

## SCHEDULE 1 TO PLAN

## DEFINED TERMS

As used in Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1 "Administrative Claim" means Post-Petition Obligations evidencing a right to payment for costs and expenses of administration allowed under Sections 507(a) and 503(b) and otherwise under the Bankruptcy Code, including, but not limited to: (a) Fee Claims including reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code or otherwise arising under this Plan; (b) plan expenses and the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of Debtor; (c) Cure Costs; (d) payroll obligations; and (e) all fees and charges assessed against the Debtor's Estate under Chapter 123 of Title 28 of the United States Code, 28 U.S.C. Sections 1911-1930. Except as otherwise provided herein, Administrative Claims must be allowed by Order of the Bankruptcy Court.

1.2 "Administrative Claim Bar Date" means the date set forth in an Order of the Bankruptcy Court, to be entered at the time of, or as a provision of the Confirmation Order, setting a Bar Date for the filing of requests for allowance of Claims for Administrative Expenses to which such Bar Date is applicable under the terms of this Plan.

1.3 "Administrative Claim Bar Order" means an Order of the Bankruptcy Court, to be entered at the time of, or as a provision of the Confirmation Order, setting the bar date for filing requests for the allowance of Administrative Claims.

1.4 "Affiliate" shall have the meaning set forth in Section 101(2) of the Bankruptcy Code.

1.5 "Allowed Claim" means:

(a) a Claim that has been listed by a Debtor on the Debtor's Schedules, as filed or as subsequently amended, as other than disputed, contingent, or unliquidated, to the extent that it is not otherwise a Disputed Claim;

(b) a Claim for which a Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, to the extent that it is not otherwise a Disputed Claim; or

(c) a Claim that is allowed: (i) in any Stipulation of Amount and Nature of Claim executed by Debtor or the Reorganized Debtor, as applicable, and Creditor; (ii) in any contract, instrument, or other agreement entered into in

connection with the Plan; (iii) in a Final Order; or (iv) pursuant to the terms of the Plan.

(d) Notwithstanding any other provision of this Plan, no Allowed Claim may include any claim for statutory attorneys' fees under O.C.G.A. § 13-1-11, unless allowed by order of the Bankruptcy Court, which becomes final with no appeal pending.

1.6 "Allowed . . . Claim" means an Allowed Claim in the particular Class or category specified.

1.7 "Allowed Priority Tax Claim" means an Allowed Claim that is a Priority Tax Claim, except that such claim shall not include any interest or penalty accruing after the Petition Date, except as specifically provided for in the Plan.

1.8 "Allowed Secured Claim" means the amount of each Allowed Claim against the Debtor that is equal to: (a) the amount stipulated as constituting the Allowed Secured Claim between Debtor and the holder of such claim, (b) the amount found to constitute such Allowed Secured Claim by the Bankruptcy Court, or (c) the lesser of (i) the total amount of indebtedness owed to the holder of such claim and (ii) the value of any property of the Estate or proceeds thereof with respect to which such creditor held a security interest or judgment lien properly perfected under the laws of the applicable jurisdiction on the Petition Date, and on the Effective Date to the extent provided under 11 U.S.C. § 506, provided that a Proof of Claim is timely-filed.

1.9 "Allowed Unsecured Claim" means an Allowed Claim that is an Unsecured Claim.

1.10 "Asset(s)" mean all property of the Debtor and the Estate and all Causes of Action of the Debtor and the Estate, all of which shall be deemed to be retained and preserved for enforcement and under the custody and control of the Estate and Debtor, as applicable, through the Reorganized Debtor, as the authorized representative of Debtor and the Estate, and administered by the Reorganized Debtor as of the Effective Date, as further set forth herein.

1.11 "Ballot" means a ballot filed in the Bankruptcy Case within the time set by the Court for filing such Ballots accepting or rejecting this Plan.

1.12 "Balloting Report" means a report of all valid ballots filed by the Debtor prior to the Confirmation of this Plan, as required by the Local Rules of the Bankruptcy Court.

1.13 "Bankruptcy Case" means this bankruptcy case filed in the United States Bankruptcy Court for the Middle District of Georgia, Macon Division by the Debtor under Chapter 11, Subchapter V of the Bankruptcy Code captioned Allison Belinda Burkett, Case No. 26-51110-RMM.

1.14 "Bankruptcy Causes of Action" means all causes of action available to Debtor as Debtor-in-Possession in the Bankruptcy Case, including, but not limited to, objections to the allowance of Claims and all other Claims, actions, avoiding powers, rights of recovery,

subordination rights, or other actions against Insiders and/or any other Persons or Entities under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference or otherwise under the Bankruptcy Code, or otherwise arising in law, equity, or admiralty, and maintainable by the Debtor-in-Possession and the Reorganized Debtor for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.15 "Bankruptcy Code" or "Code" means Title 11 of the United States Code.

1.16 "Bankruptcy Court" means the United States Bankruptcy Court for the Middle District of Georgia, Macon Division.

1.17 "Bankruptcy Rules" or "Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, as now in effect with respect to the Bankruptcy Cases.

1.18 "Bar Date" means the applicable bar date by which a Proof of Claim, proof of Interest, Ballot, or Notice must be or must have been Filed, as established by an order of the Bankruptcy Court, Bankruptcy Code, or Bankruptcy Rules, including the Bar Date Order and the Confirmation Order.

1.19 "Bar Date Order" means, as applicable, the Confirmation Order or the Order or Notice Establishing Bar Dates for Filing Proofs of Claims, proofs of Interests, Ballots, or Notices, entered by the Bankruptcy Court, as the same may have been or may be amended, modified, or supplemented.

1.20 "Cash" means cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America and certificates of deposit issued by federally-insured banks.

1.21 "Causes of Action" includes all Claims, actions, choses in action, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and cross claims, or any other claims whatsoever of Debtor and/or the Estate that are or may be pending on the Effective Date or instituted by the Debtor or the Reorganized Debtor, either before or after the Effective Date against any Person or Entity, including, without limitation, Bankruptcy Causes of Action or Claims against Affiliates, whether under the Bankruptcy Code, or otherwise, whether direct, indirect, derivative, or otherwise, and whether asserted or unasserted, known or unknown, suspected or unsuspected, whenever arising, whether prior to, on, or after the Effective Date, and of any character or kind whatsoever, whether based in contract, in tort, or otherwise, at law or in equity or under any other theory of law, including, but not limited to, (a) those actions generally or specifically retained or discussed in this Plan; (b) Bankruptcy Causes of Action; (c) Commercial Tort Claims; (d) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (e) the right to object to Claims or interests; (f) claims pursuant to Section 362 of the Bankruptcy

Code; (g) such claims and defenses as fraud, mistake, duress, usury; and (h) any other theory, without limitation and all other claims arising out of or related to any of the foregoing or discovered during or as a consequence of the pursuit of any of the foregoing. As used in the Plan, Causes of Action is intended to have the broadest possible meaning to ensure the ability of Debtor or the Reorganized Debtor to pursue any available action supported in fact, in law, in equity, in admiralty, or otherwise, and none of the specific examples provided herein shall be construed as limiting the scope or meaning of such term.

1.22 "Claim" means "the term claim," as defined in Section 101(5) of the Bankruptcy Code, against Debtor or in favor of Debtor or the Estate against third parties.

1.23 "Claims against Affiliates" include all Causes of Action available to Debtor as Debtor-in-possession in the Bankruptcy Cases against Affiliates or Insiders, including, but not limited to, all Claims, actions, avoiding powers, rights of recovery, subordination or re-characterization rights or other actions against Insiders or Affiliates under the Bankruptcy Code, including Sections 505, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code or any other applicable fraudulent conveyance, fraudulent transfer, or preference statute, rule, regulation, or ordinance or otherwise under the Bankruptcy Code or otherwise arising in law, equity, or admiralty, and maintainable for the recovery of money or property, seeking modification, disallowance, re-characterization, or equitable subordination of Claims, or other relief.

1.24 "Claims Objection Bar Date" means the latest of: (a) 120 days after the Effective Date; (b) 90 days after the Filing of a Proof of Claim for a particular Claim; (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order, the Bankruptcy Rules, or a Final Order for objecting to the applicable Claim; and (d) such later date as provided for by order of the Bankruptcy Court, which order may be entered without further notice.

1.25 "Class" means a class of Claims or Interests as set out in this Plan.

1.26 "Collateral" means any property of the Debtor that is subject to a valid and enforceable lien to secure a Claim.

1.27 "Commercial Tort Claims" means any tort claim of Debtor arising in connection with Debtor's operations, acquisition of assets, or otherwise including, but not limited to, claims for professional malpractice, director or officer Liability, trespass to real or personal property, negligent construction, interference with existing or prospective contractual rights or relationships, or violations of the bankruptcy automatic stay.

1.28 "Confirmation" means the entry of the Confirmation Order on the docket of the Bankruptcy Court within the meaning of Bankruptcy Rules 5003 and 9021.

1.29 "Confirmation Date" means the date of Confirmation.

1.30 "Confirmation Hearing" means the hearing held by the Bankruptcy Court on Confirmation of the Plan, as such hearing may be continued from time to time.

1.31 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.32 "Creditor" means any Person that is the holder of a Claim against one or more of the Debtor.

1.33 "Cure Costs" means such amount as may be found by the Bankruptcy Court to be due to the holder of an Executory Contract in order to assume an Executory Contract in accordance with 11 U.S.C. § 365.

1.34 "Debtor" means Allison Belinda Burkett, Debtor and Debtor-in-Possession in this Bankruptcy Case.

1.35 "Designated Notice" means notice and an opportunity for a hearing as described in Section 102(a) of the Bankruptcy Code. Following entry of the Confirmation Order, the time for the giving of any notices shall be reduce to fourteen (14) days, and notice shall be limited to the Notice Parties. When a party gives Designated Notice and no written objection is served within fourteen (14) days of service, the party to whom Designated Notice is given shall be presumed to have consented to or have no opposition to the relief or request identified in the Designated Notice. If a timely objection is served, then Court will hold a hearing on the objection on no less than seven (7) days' notice. Notwithstanding anything in this provision to the contrary, for the first twenty-one (21) days after the Confirmation Date, Designated Notice shall include all parties in interest entitled to notice pursuant to Bankruptcy Rule 2002(i).

1.36 "Disposable Income" has the meaning ascribed to it in Section 1191(d) of the Bankruptcy Code.

1.37 "Disposition" means any sale, conveyance, transfer, assignment, liquidation, or abandonment of any Assets by the Reorganized Debtor.

1.38 "Disputed Claim" means:

(a) if no Proof of Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law: (i) a Claim that is listed on the Debtor's Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtor, the Reorganized Debtor, or any other party in interest has Filed an objection by the Claims Objection Bar Date; or

(b) if a Proof of Claim or request for payment of an Administrative Claim has been Filed by the Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection has been Filed by Debtor, the Reorganized Debtor or any other party in interest, as the case may be, by the Claims Objection Bar Date, if such objection has not been withdrawn or denied by a Final Order.

1.39 "Disputed Claims Reserve" means the interest-bearing account to be established and maintained by the Reorganized Debtor to reserve for certain Disputed Claims, as further provided in the Plan, provided that claims for Statutory Attorneys' Fees shall not be considered Allowed Claims for any purpose under this Plan and no escrow shall be provided hereunder with respect to any such claim.

1.40 "Effective Date" means the first day of the month that follows the Confirmation Date and on which no stay of the Confirmation Order is in effect; provided, however, that, without complying with any provisions of the Code governing Plan modifications, following Confirmation, the Debtor may, on one occasion, choose an earlier Effective Date or extend the Effective Date for a period of no more than ninety (90) days, provided that the Debtor dockets such notice in the Bankruptcy Court and serves such notice on all creditors and parties-interest.

1.41 "Entity" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.42 "Equity Interest" means the rights of Allison Belinda Burkett, respectively, in her real, personal, tangible, or intangible property.
.

1.43 "Equity Interest Holder" means the holder of an Equity Interest.

1.44 "Estimated Claim" means any Claim, the amount of which has been estimated by the Bankruptcy Court pursuant to 11 U.S.C. § 502(c). No distribution shall be made on account of an Estimated Claim under this Plan until the Bankruptcy Court has determined the actual amount of the Claim. Until such time, all Estimated Claims shall be treated as Disputed Claims under this Plan.

1.45 "Estate" means the Estate created for the Debtor in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

1.46 "Executory Contract" means a contract between or among the Debtor and a third party under which all parties owed continuing obligations of performance on the Petition Date as defined under case law interpreting Section 365 of the Bankruptcy Code, notwithstanding O.C.G.A. § 13-1-2.

1.47 "Fee Claim" means a Claim under Sections 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Bankruptcy Case from the Petition Date through the Confirmation Date.

1.48 "File," "Filed," or "Filing" means file, filed, or filing with the Bankruptcy Court in the Bankruptcy Case.

1.49 "Final Decree" means a final decree as described in Bankruptcy Rule 3022.

1.50 "Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any

other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired.

1.51 "GAAP" means United States generally accepted accounting principles, consistently applied, as in effect on the Effective Date of this Plan.

1.52 "Governmental Entity" means any federal, state, or local or foreign government; any political subdivision thereof; any court, administrative or regulatory agency, department, instrumentality, body, or commission, or other governmental authority or agency, domestic or foreign.

1.53 "IRC" means the United States Internal Revenue Code of 1986, as amended.

1.54 "IRS" means the Internal Revenue Services agency of the United States.

1.55 "Insider" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.56 "Insurance Claim" means any claim of the Debtor under any Insurance Contract covering the Debtor or any interest of the Debtor in property, arising prior to or following the Effective Date of this Plan, including claims of the Debtor against third parties to the extent covered by the Debtor's insurance.

1.57 "Insurance Contract" means any contract of insurance to which Debtor was a party on the Petition Date or on any date thereafter until the Effective Date of this Plan, or thereafter for the term of the Insurance Contract.

1.58 "Non-Tax Priority Claims" means any Claim that is entitled to priority in payment pursuant to Section 507(a)(3), (4), (5) or (6) of the Bankruptcy Code and that is not a Priority Tax Claim, Administrative Claim, or a Secured Claim.

1.59 "Notice Parties" means (i) with respect to notices served by the Debtor, the U.S. Trustee, the Subchapter V Trustee, and all other parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served the same on Debtor's counsel or (ii) with respect to notices served by a party other than the Debtor, the Debtor and her counsel, the U.S. Trustee, the Subchapter V Trustee, and all parties in interest who, after entry of the Confirmation Order, have filed a request for notice with the Clerk of the Court and have served the same on the Debtor's counsel.

1.60 "O.C.G.A." means the Official Code of Georgia Annotated, as amended.

1.61 "Person" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.62 "Petition Date" means July 1, 2026.

1.63 "Plan" means this plan of reorganization for the Debtor and all exhibits and schedules attached hereto or referenced herein, which exhibits shall be part of the Plan as if set forth fully herein, as any of the same may be amended, modified, or supplemented.

1.64 "Post-Petition Obligations" means, with respect to accounts payable or other obligations of the Debtor, such accounts or obligations which have arisen in the ordinary course of business of the Debtor, or are otherwise granted Administrative Claim status under the Plan, after the date of the filing of the Bankruptcy Cases and before Confirmation of this Plan, exclusive of interest accruals on account of Pre-petition Obligations of the Debtor.

1.65 "Pre-Petition" means prior to July 1, 2026, the date of the filing of the voluntary petition under Chapter 11 by the Debtor.

1.66 "Pre-petition Obligations" means all obligations of the Debtor arising Pre-Petition.

1.67 "Priority Tax Claim" means a Claim that is entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.68 "Pro Rata" means, when used with reference to a distribution to holders of Allowed Claims, that the gross amounts to be paid will be divided and paid proportionately, so that with respect to a particular Allowed Claim, the ratio of (a)(i) the amount of property distributed on account of such Claim to (ii) the Allowed Amount of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all Allowed Claims of the Class in which such Claim is included to (ii) the amount of all Allowed Claims in that Class. In determining such ratio, the Reorganized Debtor shall not include interest otherwise accruing upon such Claim after the Effective Date, may round percentages to the nearest 1/100th (.01), and may round each resulting claim to the nearest one dollar ($1.00).

1.69 "Professional" means any professional employed in the Bankruptcy Case pursuant to Sections 327 or 1103 of the Bankruptcy Code or any professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.70 "Proof of Claim" means a writing complying in all respects with Bankruptcy Rule 3001, and filed in compliance with Bankruptcy Rule 3003, within the time provided by any Bar Date Order entered in the Bankruptcy Case, or any other Order specifically applicable to such writing.

1.71 "Reorganized Debtor" means the Debtor following the Confirmation of this Plan.

1.72 "Schedules" mean the schedules of assets and liabilities and the statements of financial affairs Filed by Debtor, as required by Section 521 of the Bankruptcy Code and the official bankruptcy forms, as the same may have been or may hereafter be amended, modified, or supplemented by Debtor or the Reorganized Debtor, as the case may be.

1.73 "Secured Claim" means a Claim that is secured by a lien on property in which the Debtor's Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Sections 506(a), and if applicable, Section 1129(b) of the Bankruptcy Code.

1.74 "Set-off Claims" means all setoff claims to the extent allowed under Section 553 of the Bankruptcy Code.

1.75 "Special Notice Parties" means the United States Trustee, the Subchapter V Trustee, and the parties on the Reorganized Debtor's mailing matrix which Reorganized Debtor may shorten as necessary post-Confirmation provided that such shortened mailing matrix is approved by the Bankruptcy Court, and any other parties that have requested in writing a relevant special notice from the Reorganized Debtor.

1.76 "Statutory Attorneys' Fees" shall mean the portion of any Claim constituting Pre-Petition attorneys' fees charged against the Debtor under O.C.G.A. § 13-1-11.

1.77 "Statutory Interest" shall mean, unless the Bankruptcy Court determines otherwise at the Confirmation Hearing, for all holders of an Allowed Claim who are entitled to interest under 11 U.S.C. § 511, including the holder of an Allowed Priority Tax Claim who is entitled to interest under U.S.C. § 511, the rate of interest charged by such holders under non-bankruptcy state or federal law as of the Confirmation Date.

1.78 "Stipulation of Amount and Nature of Claim" means a stipulation or other agreement between the Debtor or the Reorganized Debtor and a Creditor, or an agreed order of the Bankruptcy Court, establishing the amount and nature of a Claim.

1.79 "Sub V Trustee" or "Subchapter V Trustee" means the Subchapter V Trustee, Jenny Martin Walker, or any successor to Jenny Martin Walker, appointed by the United States Trustee under Section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in this Bankruptcy Case.

1.80 "Total Class 4 Distribution" or "Class 4 Total Distribution" means the sum total of Disposable Income that is projected on the Budget for the Reorganized Debtor, an amount that the Reorganized Debtor is authorized to prepay without penalty, in full satisfaction of her Class 4 obligations.

1.81 "Uniform Commercial Code" means the Uniform Commercial Code suggested by the Commission of Uniform State Laws, as enacted and in force in the State of Georgia.

1.82 "Unsecured Claim" means any Claim allowed under 11 U.S.C. § 502 that is not an Administrative Claim, Non-Tax Priority Claim, Priority Tax Claim, Secured Claim, or an Interest.

1.83 "Voting Deadline" means the deadline set by the Court for receipt of Ballots respecting this Plan.

[END OF DEFINED TERMS]

## EXHIBITS AND SCHEDULES

**Exhibit A: Liquidation Analysis**

**Exhibit B: Budget**

**Schedule 1: Definitions**

**Schedule 2: Claims**

**Schedule 3: Potential Avoidance Actions**

**EXHIBIT A**
**BURKETT LIQUIDATION ANALYSIS**
**(Bankr. M.D. Ga. 26-51110-RMM)**

| ASSETS OF DEBTOR | FMV | LIQUID. VALUE | CH. 7 COSTS | EXEMPTIONS | SECURED CLAIMS | NON-EXEMPT | GROSS DIST. |
|---|---|---|---|---|---|---|---|
| 207 Twisted Laurel Lane (residence) | $448,200.00 | $313,740.00 | ($21,961.80) | ($40,000.00) | ($241,709.00) | $10,069.20 | $10,069.20 |
| 558 Heleconia Ave. (Jamaica) | $300,000.00 | $210,000.00 | ($31,500.00) | $0.00 | ($341,365.16) | ($162,865.16) | $0.00 |
| 2019 Volkswagon Tiquan | $8,000.00 | $5,600.00 | ($560.00) | ($2,500.00) | $0.00 | $2,540.00 | $2,540.00 |
| 2021 Ford Escape | $8,500.00 | $5,950.00 | ($595.00) | ($2,500.00) | $0.00 | $2,855.00 | $2,855.00 |
| RFCU (4697-00) | $2,845.21 | $2,845.21 | $0.00 | ($6,364.96) | $0.00 | ($3,519.75) | $0.00 |
| RFCU (4697-01) | $2,015.17 | $2,015.17 | $0.00 | ($2,015.17) | $0.00 | $0.00 | $0.00 |
| RFCU (4691-70) | $3,815.47 | $3,815.47 | $0.00 | ($1,619.87) | $0.00 | $2,195.60 | $2,195.60 |
| Truist (1313) | $10,060.22 | $10,060.22 | $0.00 | ($4,719.75) | $0.00 | $5,340.47 | $5,340.47 |
| JMMB 8829 ($26.81 USD) (No equitable interest) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JMMB 8400 ($180.03 USD) | $180.03 | $180.03 | ($18.00) | $0.00 | $0.00 | $162.03 | $162.03 |
| JMMB 9880 ($84,150.64 USD) (No equitable interest) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JMMB 4681 ($65,631.84 USD) (No equitable interst) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JMMB 6450 ($7,104.60 USD) (No equitable interest) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JMMB 9881 ($316.42 USD) | $316.42 | $316.42 | ($31.64) | $0.00 | $0.00 | $284.78 | $284.78 |
| JMMB 8341 ($32.60 USD) (No equitable interest) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| JMMB 7149 ($2,993.42 USD) (No equitable interest) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Middle Georgia Vascular Surgery Center L.L.C. | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Flamingo Medical Spa, LLC | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Flamingo Medical Services, LLC | $15,251.60 | $15,251.60 | $0.00 | $0.00 | $0.00 | $15,251.60 | $15,251.60 |
| Burkett Vascular Services, LLC | $10.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| SEP-IRA (Prudential #1494) | $23,390.00 | $23,390.00 | $0.00 | ($23,390.00) | $0.00 | $0.00 | $0.00 |
| SEP-IRA (Prudential #2676) | $163,283.00 | $163,283.00 | $0.00 | ($163,283.00) | $0.00 | $0.00 | $0.00 |
| TIAA Creff 529 | $20,000.00 | $20,000.00 | ($2,000.00) | $0.00 | $0.00 | $18,000.00 | $18,000.00 |
| TIAA Creff 529 | $20,000.00 | $20,000.00 | ($2,000.00) | $0.00 | $0.00 | $18,000.00 | $18,000.00 |
| Hilton Grand Vacations Time Share | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Mass Mutal Whole Life Insurance | $43,049.09 | $43,049.09 | ($4,304.91) | ($2,000.00) | $0.00 | $36,744.18 | $36,744.18 |
| Household Goods/Jewelry | $26,885.00 | $16,131.00 | ($1,613.10) | ($5,500.00) | $0.00 | $9,017.90 | $9,017.90 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total** | **$1,095,821.21** | **$855,627.21** | **($64,584.45)** | **($253,892.75)** | **($583,074.16)** | **($45,924.15)** | **$120,460.76** |

| Calculation of Unsecured Claims | Amt. |
|---|---|
| Estimated Allowed Unsecured Claims (in liquidation) | $1,158,071.32 |

**Ch. 7 Costs for Comm.** **$33,084.45**

| | | |
|---|---|---|
| Ch. 7 Commission | | ($10,406.91) |
| Ch. 7 Prof. Fees | | ($10,000.00) |
| Ch. 11 Admin. Exp. | | ($30,000.00) |
| Priority Claims | | ($33,847.19) |
| **Net Liquid Value** | | $36,206.65 |
| **Unsecured Claims** | | **$1,158,071.32** |
| **% to Unsecureds** | | |
| **Under Ch. 7** | | **3.13%** |
| **Under Plan** | | **4.54%** |
| **$ to Unsecureds** | | |
| **Under Ch. 7** | | **$36,206.65** |
| **Under Plan** | | **$40,317.00** |

**Assumptions**

1. Cash is projected as of the 01/01/2027 effective date on the Budget.
2. Liquidation Value is 100% for cash assets, 70% of Fair Market Value for the vehicles, 60% of fair market value for household items, and 70% for residential real property.
3. Ch. 7 Costs are 10% of the Liquidation Value (except for non-U.S. assets)
4. Trustee will abandon assets where secured claim exceeds liquidation value.
5. Ch. 7 Commission is based on the statutory formula.
6. Secured Claim amounts are estimated as of the 01/01/2027 Effective Date.
7. Administrative Expenses estimated as of the Effective Date

| | |
|---|---|
| Stone & Baxter Fees | $25,000.00 |
| Subchapter V Trustee Fees | $5,000.00 |
| Total Admin. Expenses | $30,000.00 |

8. In a liquidation, the Ch. 7 Priority Claims would be as noted under the assumption that the Debtor's real estate and income taxes owed (as shown in POCs) would be paid following the presumed sale of Debtor's residence by Trustee in a liquidation.
9. Solely for settlement purposes, the Debtor's initial due diligence as to the preference claims the Debtor may have (including as to potential defenses) shows that the potential recovery would be less than the required litigation expenses, whether hourly or contingent***
10. Flamingo Medical Services, LLC is listed at $15,251.60 on the assumption that a forced sale of the LLC results in a net enterprise value of such amount. before taking into account any capital gain taxes that would flow through to the Debtor, with admin priority.
11. Account JMMB 4681 stands in Debtor's name, but Debtor holds bare legal title only as fiduciary for her incapacitated mother. 100% of equitable ownership resides with Joyce Clue.
12. Accounts JMMB 8829, 9880, 6450, 8341, and 4149 are held jointly in the names of Debtor, her sister, and her mother. 100% of the funds residing in these accounts consist of her mother's income/real estate proceeds, supplemented by occasional voluntary family support contributions made by Debtor for her mother's care (as disclosed in Debtor's budget). Debtor holds bare legal title only as an informal fiduciary/agent for her incapacitated mother.

***This statement is solely for settlement purposes and not an admission or waiver by the Debtor in any proceeding brought by the Debtor or her successor against any recipient of potentially preferential payments.

**EXHIBIT B**
**ALLISON BELINDA BURKETT PLAN BUDGET**
**(Bankr. M.D. Ga. 26-51110-RMM)**

| **Cash and Income/Receipts** | **Jan-27** | **Feb-27** | **Mar-27** | **Apr-27** | **May-27** | **Jun-27** | **Jul-27** | **Aug-27** | **Sep-27** | **Oct-27** | **Nov-27** | **Dec-27** | **2027** | **2028** | **2029** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beg. Cash | $19,224 | $22,094 | $24,964 | $27,834 | $19,454 | $22,324 | $13,943 | $16,813 | $19,683 | $11,303 | $14,173 | $17,043 | $19,224 | $8,663 | $34,102 |
| Debtor Salary (MGVSC) | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $144,000 | $144,000 | $144,000 |
| Contract Employee Work | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $36,000 | $36,000 | $36,000 |
| Non-debtor Distributions | $9,600 | $9,600 | $9,600 | $9,600 | $9,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $73,200 | $43,200 | $43,200 |
| Rent from Jamaica Home | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $36,000 | $36,000 |
| **Total Receipts** | **$24,600** | **$24,600** | **$24,600** | **$24,600** | **$24,600** | **$18,600** | **$18,600** | **$18,600** | **$18,600** | **$18,600** | **$18,600** | **$18,600** | **$253,200** | **$259,200** | **$259,200** |
| **Household Expenses** | **Jan-27** | **Feb-27** | **Mar-27** | **Apr-27** | **May-27** | **Jun-27** | **Jul-27** | **Aug-27** | **Sep-27** | **Oct-27** | **Nov-27** | **Dec-27** | **2027** | **2028** | **2029** |
| Life Insurance | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $461 | $5,527 | $5,527 | $5,527 |
| HOA (Georgia and Jamaica) | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $2,400 | $2,400 | $2,400 |
| Medical | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $660 | $7,920 | $7,920 | $7,920 |
| Water/Sewer/Garbage | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $60 | $720 | $720 | $720 |
| Electric/Heat/Gas | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $375 | $4,500 | $4,500 | $4,500 |
| Home Maintenance | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $6,000 | $6,000 | $6,000 |
| Household Supplies | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $6,000 | $6,000 | $6,000 |
| Recreation | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $150 | $1,800 | $1,800 | $1,800 |
| Clothing, Dry Cleaning and Laundry | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $70 | $840 | $840 | $840 |
| Time Share (Hilton Head) | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $350 | $4,200 | $4,200 | $4,200 |
| Personal Care Products | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $200 | $2,400 | $2,400 | $2,400 |
| Cable, Phone & Internet | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $250 | $3,000 | $3,000 | $3,000 |
| Transportation Costs | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $450 | $5,400 | $5,400 | $5,400 |
| Food | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $300 | $3,600 | $3,600 | $3,600 |
| Car Insurance | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $472 | $5,664 | $5,664 | $5,664 |
| Dependant Support of Children | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $600 | $7,200 | $7,200 | $7,200 |
| Mom Cell Phone | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $1,200 | $1,200 | $1,200 |
| Mom Memory Care Center | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $3,600 | $43,200 | $43,200 | $43,200 |
| Income Taxes | $0 | $0 | $0 | $11,250 | $0 | $11,250 | $0 | $0 | $11,250 | $0 | $0 | $11,250 | $45,000 | $45,000 | $45,000 |
| **Total Expenses** | **$9,298** | **$9,298** | **$9,298** | **$20,548** | **$9,298** | **$20,548** | **$9,298** | **$9,298** | **$20,548** | **$9,298** | **$9,298** | **$20,548** | **$156,571** | **$156,571** | **$156,571** |
| **Admin. & Priority** | | | | | | | | | | | | | | | |
| Stone & Baxter | $5,000 | $5,000 | $5,000 | $5,000 | $5,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $25,000 | $0 | $0 |
| Sub V Trustee | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $5,000 | $0 | $0 |
| IRS | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $756 | $9,078 | $9,078 | $9,078 |
| **Total Admin/Priority** | **$6,756** | **$6,756** | **$6,756** | **$6,756** | **$6,756** | **$756** | **$756** | **$756** | **$756** | **$756** | **$756** | **$756** | **$39,078** | **$9,078** | **$9,078** |
| **Secured Claims** | | | | | | | | | | | | | | | |
| Class 2 - Robins Financial Credit Union | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $2,200 | $26,400 | $26,400 | $26,400 |
| Class 3 - Victoria Mutual Building Society | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $3,476 | $41,712 | $41,712 | $41,712 |
| **Total Secured** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$5,676** | **$68,112** | **$68,112** | **$68,112** |
| **Total Expenes/Plan Pmts** | **$21,730** | **$21,730** | **$21,730** | **$32,980** | **$21,730** | **$26,980** | **$15,730** | **$15,730** | **$26,980** | **$15,730** | **$15,730** | **$26,980** | **$263,761** | **$233,761** | **$233,761** |
| **Cash Before Class 4 Pmt** | **$22,094** | **$24,964** | **$27,834** | **$19,454** | **$22,324** | **$13,943** | **$16,813** | **$19,683** | **$11,303** | **$14,173** | **$17,043** | **$8,663** | **$8,663** | **$34,102** | **$59,541** |
| Class 4 Unsecured Payment | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Ending Cash** | **$22,094** | **$24,964** | **$27,834** | **$19,454** | **$22,324** | **$13,943** | **$16,813** | **$19,683** | **$11,303** | **$14,173** | **$17,043** | **$8,663** | **$8,663** | **$34,102** | **$59,541** |

| **Projected Disposable Income** | |
|---|---|
| Total Receipts (36 months) | $771,600 |
| Total Expenditures (36 months) | $731,283 |
| **Projected Disposable Income** | **$40,317** |

**SCHEDULE 2**
**ALLISON BELINDA BURKETT CLAIMS**
**(Bankr. M.D. Ga. 26-51110-RMM)**

| Creditor | Scheduled Amt | Disputed? | POC # | Class | POC Amt. | Est. Claim |
|---|---|---|---|---|---|---|
| Robins Financial Credit Union | $241,709.00 | N | N/A | 2 | N/A | $241,709.00 |
| Victoria Mutual Building Society | $341,365.16 | N | N/A | 3 | N/A | $341,365.16 |
| Georgia Department of Revenue | $0.00 | Y | N/A | Priority | N/A | $0.00 |
| Houston County Tax Commissioner | $0.00 | Y | N/A | Priority | N/A | $0.00 |
| Internal Revenue Service | $0.00 | Y | 7 | Priority | $24,194.37 | $24,194.37 |
| Advanced Wound Care LLC a/k/a WoundGenex | $235,100.00 | Y | 8 | 4 | $235,100.00 | $235,100.00 |
| American Express National Bank | $9,784.48 | N | 4 | 4 | $9,509.83 | $9,509.83 |
| American Express National Bank (Acct *1008) | $0.00 | N | 5 | 4 | $6,674.87 | $6,674.87 |
| American Vascular Associates | $272,765.44 | Y | N/A | 4 | N/A | $0.00 |
| Ameris Bank (div. Balboa Capital) | $0.00 | Y | 9 | 4 | $254,166.50 | $254,166.50 |
| Balboa Capital Corporation | $137,660.64 | Y | 9 | 4 | N/A | $0.00 |
| Balboa Capital Corporation | $99,284.98 | Y | 9 | 4 | N/A | $0.00 |
| BMW Bank of North America | $29,496.59 | N | 3 | 4 | $28,414.78 | $28,414.78 |
| Capital One Bank (USA), N.A. | $7,809.03 | N | 6 | 4 | $14,400.55 | $14,400.55 |
| City of Warner Robins | $56.50 | N | N/A | 4 | N/A | $56.50 |
| Cox Communications, Inc | $56.91 | N | N/A | 4 | N/A | $56.91 |
| Discover | $1,613.21 | N | N/A | 4 | N/A | $1,613.21 |
| Flint Electric Membership Corporation | $300.00 | N | N/A | 4 | N/A | $300.00 |
| Grand Vacations/HGV | $13,039.49 | N | N/A | 4 | N/A | $13,039.49 |
| MMP Capital Account Services | $196,092.97 | Y | N/A | 4 | N/A | $0.00 |
| NewLane Finance Company | $141,629.73 | Y | N/A | 4 | N/A | $0.00 |
| NewLane Finance Company | $44,334.00 | Y | N/A | 4 | N/A | $0.00 |
| North Mill Equipment Finance LLC | $196,092.97 | Y | 1 | 4 | $197,627.93 | $197,627.93 |
| Philips Healthcare | $39,060.00 | Y | N/A | 4 | N/A | $0.00 |
| Philips Healthcare | $90,094.01 | Y | N/A | 4 | N/A | $0.00 |
| Philips Medical Capital, LLC | $0.00 | Y | N/A | 4 | N/A | $0.00 |
| Reliant Capital Group | $0.00 | Y | N/A | 4 | N/A | $0.00 |
| Stearns Bank N.A. | $38,471.53 | Y | 12 | 4 | $37,479.55 | $37,479.55 |
| Truist Bank (Credit Card Acct *6236) | $0.00 | N | 13 | 4 | $12,400.50 | $12,400.50 |
| Truist Financial Corporation | $105,981.25 | Y | 10 | 4 | $106,002.59 | $106,002.59 |
| Truist Financial Corporation | $237,150.17 | Y | 11 | 4 | $241,228.11 | $241,228.11 |
| **TOTALS** | **$2,478,948.06** | | | | **$1,167,199.58** | **$1,765,339.85** |

| Claim Classification | Est. Claim |
|---|---|
| **Secured** | $583,074.16 |
| **Priority** | $24,194.37 |
| **Unsecured** | $1,158,071.32 |
| **TOTAL** | **$1,765,339.85** |

**SCHEDULE 3**
**ALLISON BELINDA BURKETT POTENTIAL AVOIDANCE ACTIONS**
**(Bankr. M.D. Ga. 26-51110-RMM)**

| Recipient's Name | Insider? | Payment Date | Payment Amount | Purpose |
|---|---|---|---|---|
| Lee Alleyne | Y | Multiple | $900.00 | Transfer to Insider/Family Member |
| AJ Alleyne | Y | Multiple | $300.00 | Transfer to Insider/Family Member |
| Columbus Communications Kingston | N | Multiple | $532.29 | Payment of cable servcies for benefit of Family Member |
| Lime Kingston 5 JM | N | Multiple | $254.73 | Payment of Utilities for benefit of Family Member |
| JPS-Ecommerce Kingston | N | Multiple | $382.14 | Payment of Utilities for benefit of Family Member |

Debtor hereby incorporates the Schedules/SOFA, including all amendments, as if stated in the Plan. If you received a payment from the Debtor during the 90 day period before the Petition Date, then you are deemed to be on notice of such payment based on your receipt of it and to be on notice of any potential avoidance suit to recover it.